EKUNSUMI, Appellant,

v.

CINCINNATI RESTORATION, INC., Appellee.

[Cite as *Ekunsumi v. Cincinnati Restoration, Inc.* (1997), 120 Ohio App.3d 557.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950816.

Decided June 25, 1997.

558

*David E. Stenson*, for appellant.

*Rendigs, Fry, Kiely & Dennis* and *Jane E. Gerhardt*, for appellee.

*Per Curiam.*

Defendant-appellee Cincinnati Restoration, Inc. ("CRI") is a nonprofit mental health agency providing services to individuals with severe mental disabilities.

On February 15, 1994, plaintiff-appellant Wahab Ekunsumi applied for employment with CRI. After an interview, CRI sent appellant a letter notifying him that he had been selected for the position of rehabilitation crew leader. As rehabilitation crew leader, appellant was responsible for the supervision of a janitorial work crew of mentally disabled individuals. Appellant was instructed in the letter to contact CRI's Personnel Coordinator, Peggy Kistner, to schedule a meeting to review personnel policies and procedures. The letter also stated, "Your employment will not be considered final until you have submitted various documents and they have been verified and accepted by CRI."

Appellant met with Peggy Kistner to discuss employment matters on February 20, 1994. At that time, appellant received an "Employment Agreement," setting forth a starting date of March 3, 1994. The agreement stated that appellant had read and agreed to abide by the personnel policies of CRI. During the meeting, appellant was informed of CRI's policy of conducting employee background checks. Appellant executed a Hamilton County Sheriff's Office Personal Information Release Form and a Cincinnati Police Division Personal Information Release Form, authorizing the release of any information regarding criminal convictions. Appellant stated that he informed Kistner that he had misdemeanor convictions.

Appellant began to work on March 3, 1994, as a rehabilitation crew leader at the Pauline Warfield Lewis Center, a state-owned and operated psychiatric hospital. Subsequently, CRI received a copy of appellant's conviction record from the city of Cincinnati and Hamilton County. The record contained a speeding violation in 1993, and convictions for resisting arrest in 1993, theft in 1989 and disorderly conduct in 1987 and 1989. Appellant provided the names of his attorneys who could explain the circumstances surrounding his convictions. Kistner agreed to contact the attorneys and informed appellant that a decision regarding the continuation of his employment would have to be made.

Kistner spoke with appellant's attorneys about the convictions. Subsequently, Kistner, CRI Executive Director Anthony Datillo, and CRI Program Director Deborah Dutton discussed the matter and determined that appellant's employment should be terminated because of his convictions. Appellant's employment was terminated on April 19, 1994, due to the results of his background check.

Appellant filed the within complaint against CRI alleging racial discrimination, breach of contract and intentional or negligent infliction of emotional distress. CRI filed a motion for summary judgment on all claims, which the trial court granted. Appellant timely appealed, raising three assignments of error for our review.

■ Appellant's first assignment of error alleges that the trial court erred in granting CRI's motion for summary judgment on the issue of racial discrimination.

In order to grant summary judgment, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with such evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274.

■ A plaintiff can establish a prima facie case of racial discrimination in employment by showing that (1) he was a member of a protected class, (2) he was discharged, (3) he was qualified for the position, and (4) a comparable unprotected person was retained or not disciplined for conduct similar to that which resulted in the plaintiff's discharge. *Henderson v. Cincinnati Bell Long Distance, Inc.* (1996), 113 Ohio App.3d 793, 682 N.E.2d 41; *Allen v. Ohio Civ. Rights Comm.* (May 8, 1986), Mahoning App. No. 85 C.A. 68, unreported, 1986 WL 5393.

Appellant, an African–American, satisfies the first and second elements of a prima facie case of racial discrimination because he is member of a protected class and he was discharged.

Appellant has not identified any instance of alleged racial discrimination occurring in his employment other than his discharge. He has presented no evidence that his discharge was based on anything other than his criminal record. Appellant has not set forth a single occasion where an unprotected, similarly situated employee was treated differently. Therefore, appellant cannot establish the fourth element of a prima facie case of racial discrimination.

■ Appellant argues that CRI's employment policies create disparate-treatment discrimination in that a policy of excluding applicants from employment or discharging employees solely on the basis of their criminal record excludes a disproportionate number of nonwhite applicants or employees. We disagree. Appellant has failed to show that CRI had a policy of automatically excluding prospective employees or discharging present employees on the basis of their criminal records. The record in the case *sub judice* reveals that the decision to discharge appellant was made based upon the facts and circumstances of his particular case. CRI considered appellant's convictions, asked appellant about his record, spoke with his attorneys about his record, contacted CRI's attorney, discussed the situation and then made a reasoned decision to discharge

appellant. CRI's actions do not amount to disparate-impact discrimination or disparate-treatment discrimination. The first assignment of error is overruled.

■ Appellant's second assignment of error alleges that the trial court erred in granting CRI's motion for summary judgment on appellant's claim for breach of contract.

Appellant's claim for breach of an express or implied employment contract fails because he has not set forth any evidence to show a contractual intent on the part of the parties to modify the at-will nature of his employment. See *Walker v. Procter & Gamble Co.* (Oct. 2, 1996), Hamilton App. No. C–950188, unreported, 1996 WL 557799.

■ Appellant argues that the doctrine of promissory estoppel operates to preclude the granting of summary judgment because appellant relied to his detriment on CRI's offer of employment in giving up a management position with another employer. Promissory estoppel applies when (1) there is a clear, unambiguous promise; (2) there is reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of the reliance on the promise. *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 661 N.E.2d 796; *Pulver v. Rookwood Highland Tower Invest.* (Mar. 26, 1997), Hamilton App. Nos. C–950361 and C–950492, unreported, 1997 WL 133422.

We hold that the doctrine of promissory estoppel does not apply in the instant case because appellant did not rely to his detriment on any promise made by CRI. Appellant testified in his deposition that he left his former employer because the employer asked him to transfer to another location and did not offer him a corresponding increase in salary. The second assignment of error is overruled.

■ The third assignment of error alleges that the trial court erred in granting CRI's motion for summary judgment as to appellant's claim for intentional infliction of emotional distress.

■ In order to recover for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Walter v. Marion Prod. Credit Assn.* (1987), 42 Ohio App.3d 215, 537

N.E.2d 676; *Jackson v. Wooster Bd. of Edn.* (1985), 29 Ohio App.3d 210, 29 OBR 254, 504 N.E.2d 1144; *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 11 OBR 63, 463 N.E.2d 98.

■ CRI was entitled to terminate appellant from his at-will employment. A former employee may not recover damages from his previous employer for the intentional infliction of serious emotional distress allegedly caused by the employee's discharge from his at-will employment. *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 31 OBR 520, 511 N.E.2d 403. Construing the evidence in the instant case most strongly in favor of appellant, we hold that CRI's conduct does not rise to the extreme and outrageous level necessary for a prima facie case of intentional infliction of emotional distress. See *Brose v. Bartlemay* (Apr. 16, 1997), Hamilton App. No. C–960423, unreported, 1997 WL 180287. Further, there is no evidence that CRI intended to cause appellant emotional distress or that CRI knew or should have known that its conduct would result in severe emotional distress to appellant. The third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, P.J., DOAN and HILDEBRANDT, JJ., concur.