DECISION.
The plaintiffs-appellants, Ronda DuVall and Ronald Hawk, appeal from the judgment entered upon a jury's verdict in favor of their employer, Time Warner Entertainment Company, LP, a.k.a. Prime Star Systems. The jury found in favor of the company on DuVall's separate claim of sexual harassment by her supervisor, Gregory Spahr, and on DuVall's and Hawk's mutual claims of retaliation and negligent retention of Spahr.
In her five assignments of error, DuVall contends that the trial court erred by (1) refusing to allow her, pursuant to Civ.R. 15(B), to amend her complaint to add a claim for assault and battery; (2) denying her motion for a new trial; (3) excluding and admitting certain exhibits; (4) directing a verdict on herquid quo pro claim; and (5) granting summary judgment on her claim for intentional infliction of emotional distress. In his appeal, Hawk joins DuVall on her second and third assignments of error. We find none of the assignments sufficient to warrant reversal.[1]
 I.
Duvall was employed by Time Warner Satellite Systems from March 1985 to September 1, 1996. She worked as a customer-service representative until March 1994, when she became a direct sales representative. From 1991 to April 19, 1995, Duvall's immediate supervisor was Greg Spahr.
Hawk was employed by Warner Cable from 1982 to 1990. From October 1991 to March or April 1993, and again from March 1, 1994, to September 1, 1996, he worked for Prime Star as a cable representative. At Prime Star, Spahr was Hawk's supervisor. During the period from March 1994 to September 1, 1996, the date Time Warner eliminated their positions, Hawk and DuVall were the only sales representatives employed in Cincinnati by Prime Star Systems.
In March 1995, after Prime Star Systems determined that DuVall and Hawk were earning commissions in excess of its guidelines, Steve Everett, the regional manager, directed that the compensation of all sales representatives in the region conform to these guidelines. A month later, in a letter dated April 19, 1995, DuVall's attorney notified Time Warner that she was a target of sexual harassment by Spahr. DuVall accused Spahr of mistreating female employees by unwelcome remarks and actions. According to DuVall, Spahr repeatedly said that female employees obtained their positions by having sex with their supervisors and referred to certain local personalities in sexually explicit terms. She stated that Spahr referred to her and other female employees as "five-dollar-an-hour" females who could not succeed in sales and could be easily replaced. She said that Spahr told her that mothers should stay home with their babies. She also accused Spahr of asking his female employees to bellydance, and offering her one hundred dollars to perform as a stripper at his brother's fortieth birthday party while wearing a bag over her head so that no one would recognize her. She said that Spahr often referred to women picking up dollar bills with their genitalia and would ask DuVall if she could do the same. Additionally, DuVall said that Spahr offered her ten thousand dollars to be a surrogate mother so he could make a profit by selling their baby for twenty-five thousand dollars. She accused Spahr of regularly making degrading statements about women and about DuVall's personal life.
Although Time Warner maintained that the letter of April 19, 1995, was its first notice of DuVall's accusations, she and Hawk testified that they had earlier told Everett, who had done nothing to investigate or rectify the situation.
Warner's sexual-harassment policy, which included a complaint procedure, was contained in its employee handbook. The handbook was distributed to all employees. DuVall and Hawk acknowledged that they had both received a copy of the handbook. Although their signatures attested that they had read the handbook, both DuVall and Hawk testified that they had not.
Upon receipt of the letter from DuVall's attorney, Everett relieved Spahr and personally assumed his duties as DuVall's and Hawk's supervisor. He instructed Spahr to have no contact with DuVall. Upon receipt of the charges, Time Warner assigned Leroy Peyton, vice president of human resources and a former investigator for the Ohio Civil Rights Commission, to investigate the allegations. During his investigation, Peyton interrogated Spahr, who denied DuVall's charges against him. After interviewing the parties and the witnesses, Peyton ultimately concluded in his memorandum to senior counsel for Time Warner, dated May 22, 1995, that the evidence was insufficient to support DuVall's allegations.
However, on August 3, 1995, DuVall reported to Peyton that Spahr was calling her house and continuing "to bump into me, make snide remarks * * * and strange faces and gestures toward me" at work. Peyton concluded that Spahr's explanation in response to these allegations was unbelievable. Time Warner demoted Spahr, and DuVall and Hawk remained under Everett's supervision until October 1995, when Greg Williams succeeded Spahr as their supervisor. Five weeks after Peyton completed his investigation, DuVall and Hawk got married.
Time Warner offered evidence that in June of 1996, as part of a nationwide initiative, it eliminated the sales positions occupied by DuVall and Hawk. The phasing-out of their jobs was to be effective September 1, 1996. Only two of eighty-eight sales positions nationwide survived the company's initiative. Time Warner gave DuVall a choice of positions in customer service, cable direct sales, or cable swap sales. Hawk was given the choice either of becoming a customer-service representative or of accepting one of two direct sales positions. DuVall declined to accept any position offered. Hawk deferred choosing until September 16, 1996, when he requested the customer-service position. He was told, however, that the position was no longer available. He declined to accept any other positions.
The trial court initially granted summary judgment on the sexual-harassment and retaliation claims against Spahr in his individual capacity, as well as on DuVall's claim against the company for intentional infliction of emotional distress. After the parties rested, and before closing arguments, the trial court directed a verdict for Time Warner on DuVall's quid pro quo claim. Subsequently, DuVall and Hawk voluntarily withdrew their constructive-discharge claims. The jury returned a unanimous verdict for Time Warner on the hostile-environment, negligent-retention, and retaliation claims.
 II.
In her first assignment of error, DuVall argues that the trial court abused its discretion when it denied her request, made during Time Warner's case-in-chief, to amend her complaint to add a new claim for assault and battery. The bumping incident that was the basis for the amendment purportedly occurred in May 1995. DuVall's complaint was filed beyond the one-year limitation period on January 6, 1997. Civ.R.15(C) provides that the "amendment relates back to the original pleading." Therefore, when DuVall filed her complaint, any claim for assault and battery was already barred by the one-year statute of limitations. DuVall's first assignment of error is, therefore, overruled.
 III.
In the second assignment of error, both DuVall and Hawk contend that the trial court committed error by overruling their motion for a new trial. They argue that the verdicts were not supported by sufficient evidence, and were against the manifest weight of the evidence, with respect to DuVall's separate hostile-environment claim and DuVall's and Hawk's claims for retaliation, negligent retention, and constructive discharge. We disagree.
In a civil case, the test for sufficiency and manifest weight of the evidence is essentially the same. Cole v. CompleteAuto Transit, Inc. (1997), 119 Ohio App.3d 771, 777,696 N.E.2d 289, 293. An appellate court will not reverse a judgment of the trial court as being against the weight of the evidence if it is supported by some competent, credible evidence going to all the essential elements of the claim or defense. Myers v. Garson
(1993), 66 Ohio St.3d 610, 614 N.E.2d 742; C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
In addressing the evidence in a given case, we are guided by the principle that whether the case is civil or criminal, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The underlying reason for deference is that "the trier of fact is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and to use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273, 1276.
As provided by R.C. 4112.02(A), "[I]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the race, color, religion, sex, national origin, handicap, age or ancestry of a person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." As we stated in Delaney v. Skyline Lodge, Inc.
(1994), 95 Ohio App.3d 264, 270, 642 N.E.2d 395, 400, to prevail on a hostile-work-environment claim, an employee must allege and prove the following:
 (1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of respondeat superior liability.
Except where R.C. Chapter 4112 defines the statutory terms differently, the Ohio Supreme Court holds that federal case law interpreting and applying Title VII is generally applicable to R.C. 4112.02 claims. Genaro v. Cent. Transport, Inc. (1999),84 Ohio St.3d 293, 295-298, 703 N.E.2d 782, 784-786. Under federal case law, DuVall's claim that she was sexually harassed by her supervisor, Spahr, if proven, imputes liability to her employer pursuant to principles of vicarious liability. BurlingtonIndustries, Inc. v. Ellerth (1998), 524 U.S. 742, 118 S.Ct. 2257;Faragher v. City of Boca Raton (1998), 524 U.S. 775,118 S.Ct. 2275. See Wille v. Hunkar Laboratories, Inc. (Dec. 31, 1998), Hamilton App. No. C-971107, unreported. In the context of hostile-environment claims, Burlington Industries and Faragher
reject the rationale that lack of knowledge insulates the employer from vicarious liability. Furthermore, if the employee suffers a "tangible employment action" at the hands of a supervisor-harasser, that action alone is deemed to alter her employment conditions or to unreasonably interfere with her job performance. Burlington Industries, supra at ___,118 S.Ct. at 2265. Accordingly, the employer is strictly liable. Id. at ___,118 S.Ct. at 2269. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at ___, 118 S.Ct. at 2268.
Before beginning our analysis of the weight and sufficiency issues, we note that Burlington Industries and Faragher were not released until twenty-two days after the jury's verdict in this case. The trial court instructed the jury as follows: "[t]he employer is liable for sexual harassment by a supervisor if the employer knew or should have known of its occurrence and failed to take remedial action." Neither party objected, presumably because the instruction was a proper statement of the law at the time. In the light of Burlington Industries and Faragher, however, the trial court's instruction was error.
Furthermore, the trial court also erroneously directed a verdict as to DuVall's hostile-environment and retaliation claims against Spahr in his individual capacity. In Genaro v. Cent.Transport, Inc., supra, which was also released after the jury's verdict, the Ohio Supreme Court recognized under R.C. Chapter 4112 a claim for joint and several liability against a harassing supervisor.
These errors, however, do not affect our analysis of either the weight or the sufficiency of the evidence, because DuVall did not prevail on the linchpin issue of sexual harassment by Spahr. That issue was fact-intensive and depended entirely upon the credibility of the parties and their witnesses. Spahr vehemently denied the accusations against him. Although the evidence was conflicting, DuVall had the burden of persuading the jury that Spahr sexually harassed her—an essential element of her claim even if the evidence otherwise was sufficient for a prima facie case of a tangible employment action by Time Warner. In response to a special interrogatory, all the jurors answered "[n]o" when asked whether they found by a preponderance of the evidence that Spahr's conduct toward Ronda DuVall constituted "hostile environmental sexual harassment." The jurors' answers to the interrogatory were conclusive that DuVall had failed to meet her burden of proving sex discrimination under R.C. 4112.02 on the basis of either a hostile work environment or retaliation. Likewise, because the jury did not find that Spahr sexually harassed DuVall, DuVall's and Hawk's negligent-retention claim must also fail.
As for their retaliation claim under R.C. 4112.02(I), DuVall and Hawk were required to demonstrate, in addition to the elementsof a claim of sex discrimination, the following: (1) they engaged in protected activity; (2) Time Warner knew of their participation in the protected activity; (3) Time Warner engaged in retaliatory conduct, and (4) the alleged retaliatory action followed DuVall and Hawk's protected activity sufficiently close in time to warrant the inference of retaliatory motivation. Neal v. HamiltonCounty (1993), 87 Ohio App.3d 670, 677-678, 622 N.E.2d 1130, 1136, jurisdictional motion overruled, (1993), 67 Ohio St.3d 1481,620 N.E.2d 854. "The plaintiff cannot prevail if it appears from the evidence that the employer would have made the same decision regardless of the plaintiff's participation in the protected activity." Id. at 678, 622 N.E.2d at 1136.
At trial, Time Warner produced more than ample evidence that the sales positions of DuVall and Hawk were eliminated, not as a result of their complaints, but as part of a nationwide plan. Clearly this evidence was sufficient to rebut the couple's retaliation claim. Time Warner also offered evidence that, although it notified both DuVall and Hawk of the customer-service position, the company eventually hired an applicant who it believed was better qualified than DuVall. If the jury, in assessing the evidence and the credibility of the witnesses, believed—as it apparently did—that Time Warner did not engage in retaliatory conduct and that DuVall and Hawk ultimately left their employment because of their unhappiness with the choices left open to them, the verdict cannot be set aside on review.
It is unnecessary to address the constructive-discharge claims other than to note that, after they rested, but before the case was submitted to the jury, DuVall and Hawk voluntarily dismissed these claims.
 IV.
In their third assignment of error, DuVall and Hawk argue that that they were entitled to a new trial, pursuant to Civ.R. 59(A)(9), because the trial court erred in the admission and exclusion of evidence.
First, DuVall and Hawk challenge the trial court's exclusion of plaintiffs' exhibit 33 (Peyton's notes made during his investigation of DuVall's complaint concerning sexual harassment) and part of exhibit 34 (Peyton's memorandum with his findings and conclusions submitted to counsel for Time Warner Communications). As the trial court correctly concluded, both documents contained "numerous matters" that either were not relevant under Evid.R. 402 or were hearsay under Evid.R. 802, since they contained extrajudicial statements made by DuVall and Hawk and other persons Peyton interviewed and were offered for the truth of the matters asserted. Even though they were inadmissible themselves, the trial court allowed counsel to examine and cross-examine the parties and witnesses liberally from these exhibits. Therefore, we cannot conclude that the trial court's ruling constituted either an error law or an abuse of discretion, or that it prejudiced DuVall or Hawk.
Second, DuVall and Hawk argue that the trial court committed reversible error by excluding plaintiffs' exhibit 51 (a five-page letter, dated October 19, 1996, expressing their grievances to Time Warner Satellite Services). The letter unquestionably contained hearsay. Although DuVall and Hawk claim that exhibit 51 was offered on the issue of "notice," they neglect to specify what notice it provided, particularly since this document was compiled after their attorney's letter of April 19, 1995, to Time Warner.
DuVall and Hawk further contend that they were entitled to a new trial because of the trial court's admission of Spahr's testimony about a conversation in which Hawk told him the details of a sexual encounter with DuVall occurring in 1993, a period in which Hawk was not working for Time Warner and was married to another woman. They maintain that the testimony was (1) irrelevant and (2) violated Evid.R. 404(A) as character evidence offered to show, through Hawk, that DuVall was promiscuous in nature.
The record establishes that counsel objected to the evidence at trial only on grounds of relevancy and hearsay. In contravention of Evid.R.103(A)(1), the "specific ground" for an objection under Evid.R. 404(A) was not given. Accordingly, the issue of the admissibility of this testimony under Evid.R. 404(A) has not been preserved for appeal.
The record is silent as to the trial court's reasons for overruling objections to Spahr's testimony and its admission into evidence. A bench conference contemporaneous with the ruling was not recorded. Time Warner argues that the testimony that Hawk voluntarily shared with Spahr intimate details of his relationship with DuVall was properly admissible to challenge the credibility of the couple's statements that they concealed their relationship because Spahr was prying into DuVall's private life. This argument lacks merit, however, in light of Evid.R. 608(B), which states that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness * * * may not be proved by extrinsic evidence."
Even if the trial court's admission of Hawk's purported statements to Spahr was in error, we hold that it was harmless error under Civ.R. 61 since it did not affect a substantial right. The record contains extensive probative evidence relating to Spahr's and Hawk's claims, offered by the parties during a ten-day trial. Measured against the abundance of properly admitted evidence, the effect of the challenged testimony appears largely inconsequential. Therefore, we hold that any error was not sufficiently prejudicial to warrant reversal. See Leichtamer v.American Motors Corp. (1981), 67 Ohio St.2d 456, 475,424 N.E.2d 568, 581.
 V.
In her fourth assignment of error, DuVall contends that the trial court abused its discretion by dismissing her quid pro quo
claim at the conclusion of her case-in-chief. In Highlander v.KFC National Management Co. (C.A.6, 1986), 805 F.2d 644, 648, the court held that, to prevail under a claim of quid pro quo sexual harassment, a plaintiff must allege and prove the following:
 (1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability.
The record is silent as to evidence of sexual advances by Spahr toward DuVall, and, in fact, DuVall denied that Spahr demanded any sexual favors as a condition of job benefits. DuVall's fourth assignment of error is, therefore, overruled.
 VI.
In her fifth assignment of error, DuVall contends that the trial court wrongly granted summary judgment to Time Warner and Spahr on her claim for intentional infliction of emotional distress. The trial court's entry states that it granted summary judgment on the claim of negligent infliction of emotional distress, but the record confirms that the order extended as well to the allegations of intentional infliction of emotional distress stated in the third count of the complaint.
To recover on a claim of intentional infliction of emotional distress, it was incumbent upon DuVall to demonstrate the following:
 (1) the defendant either intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme beyond all bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.
Ekunsumi v. Cincinnati Restoration, Inc. (1997), 120 Ohio App.3d 557,561, 698 N.E.2d 503, 506; see, also, Mayo v. Kenwood CountryClub (Apr. 23, 1999), Hamilton App. No. C-980528, unreported.
We are not impressed by DuVall's argument that the bumping incident with Spahr in the hallway raised a genuine issue of material fact concerning outrageous, extreme, or intolerable conduct as defined in Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,374-375, 453 N.E.2d 666, 671, citing Restatement of the Law 2d, Torts (1965) 73, comment d to Section 46; Meyers v. HotBagels Factory, Inc. (Jan. 22, 1999), Hamilton App. No. C-980199 and C-980241, unreported. The claim articulated by DuVall in this case is factually distinguishable from the six-year history of ridicule and offensive conduct of fellow police officers against the plaintiff in Arnold v. City of Seminole (E.D.Okla. 1985),614 F. Supp. 853, the case upon which DuVall relies in her brief. Furthermore, DuVall offered nothing from which to infer that her emotional distress was serious. To the contrary, except for maternity leave, she worked continuously until she was terminated on September 1, 1996.
Accordingly, the five assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 Gorman, P.J., Painter and Sundermann, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] We have sua sponte removed this case from the accelerated calendar.