John W. PAQUETTE, Plaintiff,

v.

CITY OF MASON, OHIO,
et al., Defendants.

No. C–1–01–433.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 3, 2002.

Randolph Harry Freking, Sheila M. Smith, Carrie Atkins Barron, Freking & Betz, Cincinnati, OH, for plaintiff.

Louise S. Brock, Gary Edward Becker, Dinsmore & Shol, Cincinnati, OH, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants City of Mason's, Scot Lahrmer's, and H. Michael Drumm's Motion for Summary Judgment (doc. 13), Plaintiff's Memorandum in Opposition (doc. 15), and Defendants' Reply (doc. 19).

## BACKGROUND

The following facts have been derived from the various pleadings, motions, and responses in this case. This is a case about a part-time firefighter in the City of Mason who sent an anonymous email to his superiors and the entire department about changes in department policies (doc. 5). After Defendants Mason City Manager Scot Lahrmer and Fire Chief H. Michael Drumm learned that Plaintiff was the author of the email, he was asked to come to a meeting, which Plaintiff refused to attend, but instead sent his lawyer (doc. 13). Defendants fired Plaintiff immediately thereafter (*Id.*).

Plaintiff's email, entitled, "This ain't gonna get it anymore" was sent from "Concerned Citizen" (*Id.*). The email stated that the author would start to privately argue, speak to the press, and to the City government about "meaningless changes" instituted, by the leadership, as well as about how the "priority now is to avoid the cost of running a truck to a medical run because it may look funny, or it may cost a little more" (*Id.*). The email stated that the fire chief "will have an open door policy," and that "We will talk with our city council...about the fire department, we will ignore the chain of command when warranted" (*Id.*).

Defendants took the email to the police to have it traced on the basis that its anonymous nature put it in the same category as some earlier similar annoyance messages received by fire department personnel on pagers, and via an anonymous letter (*Id.*). Police did not issue a search warrant, but obtained a grand jury subpoena to trace the email to Plaintiff's workplace at an insurance company (*Id.*). Plaintiff was questioned by detectives at his workplace, at which time he refused to acknowledge that he was the source of the email (doc. 15).

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 based upon Defendants' alleged violation of his First Amendment right to free speech, as well as Defendants' alleged unconstitutional policy as reflected in his discharge (doc. 5). Additionally, Plaintiff asserts that his email constituted a "report" for purposes of the Ohio Whistleblower Act, and that he was discharged in violation of the retaliation provisions of O.R.C. § 4113.52 (*Id.*). Plaintiff finally brings an intentional infliction of emotional distress claim (hereinafter, "IIED") against the city manager and fire chief, and a public policy claim based upon the First Amendment and Whistleblower theories (*Id.*).

Defendants filed their motion for summary judgment attacking Plaintiff's § 1983 claim under the theory that Plaintiff's speech was not protected speech, that the email was not the reason for Plaintiff's discharge, and that the discharge did not set an official policy or custom of the department (doc. 13). Defendants also assert that City Manager Lahrmer and Chief Drumm have qualified immunity from all claims (*Id.*). Defendants challenge Plaintiff's Whistleblower claim as failing to meet both the substantive elements and procedure requirements of the statute (*Id.*). Defendants argue that Plaintiff's IIED claim fails as Plaintiff has failed to establish the requisite elements of such a claim, and even if so, all Defendants are immune from such a claim (*Id.*).

## ANALYSIS

### I. Standard of Review

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Supreme Court elabo-

rated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. *Guarino,* 980 F.2d at 410; *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir. 1991).

## II. The Section 1983 Claim

██ In order to establish illegal employer retaliation against free speech, Plaintiff must show 1) that he engaged in protected speech, 2) that he was subject to adverse action, and 3) that the protected speech was a substantial or motivating factor in the adverse action. *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 284–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Brandenburg v. Housing Authority of Irvine,* 253 F.3d 891, 897 (6th Cir.2001); *Mattox v. City of Forest Park,* 183 F.3d 515, 520 (6th Cir.1999). The Defendants attack the first and third prongs of the test, stating that Plaintiff's email was not protected, and that even if so, it was not the reason for his discharge.

██ The first prong, the determination of whether the speech is protected, is accomplished by a two-part test elaborated in *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The *Pickering* test asks: 1) did the speech address a matter of public concern, and 2) did the interest of the employee as citizen, in commenting on matters of public concern, outweigh the employer's interest in promoting the efficiency of the public services it performs

844

through its employees. *Id.* Whether Plaintiff's speech was protected under the First Amendment is a question of law for the Court, and Plaintiff has the burden of proving that his actions were constitutionally protected. *Bonnell v. Lorenzo,* 241 F.3d 800, 809–10 (6th Cir.2001). The Court determines the first part of the *Pickering* test, whether the speech addresses a matter of public concern, by considering the content, form, and context of the statement, considering the whole record. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Defendants argue that Plaintiff's email fails both parts of the *Pickering* test because it addressed internal issues relating to management of the department and thus was an insubordinate challenge to the chief's authority (doc. 13). Plaintiff counters that his email addressed matters of public concern and safety—namely, whether fire trucks should be sent out as a first response to emergency calls, and how public resources should be spent (doc. 15). He argues that his email was not a call to disobey the authority of the chief, but that it indicated when ignored, he would assert his rights as a citizen to redress his grievances to the City Council of Mason (*Id.*). Finally, Plaintiff argues that under *Boger v. Wayne County,* 950 F.2d 316, 323 (6th Cir.1991), the second part of the *Pickering* test involves issues of fact, and therefore may not be decided on a motion for summary judgment (doc. 15).

■ The Court finds Defendants' arguments well-taken because Plaintiff's email is not protected under the First Amendment. The content, form, and context of the anonymous email show that, as a matter of law, it did not constitute speech that addressed a matter of public concern. The content of Plaintiff's email included inflammatory and insubordinate comments: "We

have endured the disassembly of a great department;" "we have had enough of these silly changes. Let it be known that we will start to privately argue these changes;" "we will send a fire truck as the first responder to a medical run on the night shift;" "we will ignore the chain of command;" "C51 [the Fire Chief] will have an open door policy;" and "If this isn't what you bought into, then maybe this department isn't for you. This means both Scot [Lahrmer] and C51." These statements do not implicate public concern, but rather Plaintiff's personal disapproval of the new Fire Department administration and newly implemented procedures. There is no genuine issue as to the remaining statements within the email that Plaintiff handpicks as relating to public safety in an effort to salvage the communication: "we will talk about how our priority now is to avoid the cost of running a truck to a medical run because it may look funny, or it may cost a little more;" [the changes in management were] "at the expense of the people who need us most;" "We will send a firetruck as a first responder to a medical run on the night shift... [w]e want what the community wants, likes and has come to expect;" "our customers, both residents and industry always come first, and we spare no expense to deliver[ing] a quality product." These statements are Plaintiff's criticism of a procedure-found by his superiors to be more efficient and less expensive—not to send a fire truck as the first responder on a medical run. These statements all relate to matters of internal policies and procedures of a government department that exists to ensure the public safety. The *Connick* Court addressed these sort of statements directly:

"To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-

would plant the seed of a constitutional case... the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."

461 U.S. at 149, 103 S.Ct. 1684. The mere fact that Plaintiff's email involved a fire department does not automatically trigger public concern. The communicative purpose of Plaintiff's email was to challenge his superiors, and this predominant motivation so dominates the substance of his speech that it is rendered a matter of personal concern. *Chappel v. Montgomery County Fire Protection District No. 1*, 131 F.3d 564, 578 (6th Cir.1997).

█ The form of Plaintiff's communication suggests a firefighter hoping to rally his co-workers to challenge the administration. Plaintiff sent his email anonymously to the entire department. Plaintiff expressed his intentions in a way that suggested mutiny, using the term "we" and threatening that groups of employees were going to argue changes, send a fire truck on a medical run, and ignore the chain of command. An author's anonymity is generally an aspect of free speech protected by the First Amendment, as evidenced by a rich tradition of public dissent under pseudonym. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). However, in this case, Plaintiff used anonymity not in a public forum about a public matter but in a stealthy, targeted attack on the fire department's internal power structure. The record shows that Plaintiff had expressed himself freely by name on numerous occasions about various issues in the local newspaper through letters-to-the-editor, and that every conversation he had with a city employee or official about his letters was supportive (doc. 19). The nature of Plaintiff's email, by contrast, is distinctly different.

Finally, though Plaintiff claims that his email was sent in the context of failed attempts to discuss his concerns with his direct supervisors, the Court finds that the true context of his email was the arrival of a new fire chief. The new leadership brought new ideas and new expectations that Plaintiff did not like, that he challenged, and threatened to disobey. Additionally, Plaintiff sent his message into the particular context of a fire department. Effective fire department operations depend on esprit de corps, common loyalty, and comradeship, which are threatened when a firefighter undermines his supervisor's authority. *Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17, 26–27 (2d Cir.1979).

Having determined that Plaintiff's email fails to meet the first part of the *Pickering* test, and that it therefore does not constitute speech that addresses a matter of public concern, Plaintiff's email is removed from the realm of protected speech. Consequently, it is not necessary for the Court to reach the second part of the *Pickering* test, nor to make a finding of whether Plaintiff's email was the reason for his discharge. As such, Plaintiff's First Amendment claim can be properly disposed of by a grant of summary judgment to Defendants. However, the Court additionally notes that under the facts of this case, the employer had an independent basis for Plaintiff's discharge apart from his speech: Plaintiff's refusal to meet with his superiors. Plaintiff did not admit to authoring the message when confronted and he refused to show up to a meeting with his superiors who were trying to determine conclusively who authored the message. The Court senses a lack of credibility in a First Amendment claim by a Plaintiff who refused to speak with his employer about communication that he did not admit to writing.

## III. The Whistleblower Claim

The parties disagree on both the substantive and procedural requirements of the Ohio Whistleblower law. Defendants posit that under O.R.C. § 4113.52 a whistleblower must be challenging illegal activity by a public official (doc. 13), while Plaintiff reads the statute to also encompass activity that causes a hazard to public safety or is a felony (doc. 15). Defendants argue that the Ohio Whistleblower law mandates that Plaintiff follow the procedure of making an oral complaint and then following up with a written report sufficiently detailing the violation (doc. 13). Defendants argue that Plaintiff's anonymous email does not constitute a report (*Id.*) while Plaintiff argues that it does (doc. 15).

Plaintiff's Whistleblower Claim fails for the reasons articulated by Defendants. There was no violation of a statute or ordinance at issue in Plaintiff's email. At most, Plaintiff was criticizing the chief's shift away from written fire department "guidelines" concerning how to react to different emergencies. Because Plaintiff did not believe that any criminal violation had occurred, and because the email did not allege any criminality, his Whistleblower claim fails as a matter of law. Defendants are entitled to summary judgment on Plaintiff's Whistleblower claim, and therefore it is not necessary to reach the question of whether Plaintiff's email constituted a report.

## IV. The Intentional Infliction of Emotional Distress Claim

Defendants argue and Plaintiff concedes that the City of Mason is immune from liability for intentional infliction of emotional distress ("IIED"). Defendants correctly cite *Wilson v. Stark Cty. Dept. of Human Serv.*, 70 Ohio St.3d 450, 639 N.E.2d 105, 107 (1994) in support of summary judgment for the City of Mason on this claim. Because there is no genuine issue as to material fact, summary judgment is warranted for the City of Mason on Plaintiff's IIED claim.

Defendants argue that City Manager Lahrmer and Chief Drumm are immune because they were acting within the scope of their employment and in good faith (doc. 13). Defendants argue that Plaintiff has failed to establish that Defendants intended to cause him emotional distress or should have known that their conduct would cause such distress, or that Defendants' conduct was so extreme and outrageous to go beyond all possible bounds of decency (*Id.*). Plaintiff argues that Defendants' actions abused police power in tracing the email to him because no crime was committed, and because the Grand Jury subpoena was illegally served outside the city limits of Mason (doc. 15). Plaintiff argues that he has lost much sleep, that he has been humiliated as if he were a criminal, and that his work performance has suffered (*Id.*). Defendants respond that Plaintiff has had no negative performance reviews following the investigation, and that he ran for city council of Mason shortly thereafter, an indication that he was in good emotional health (doc. 15).

To establish a claim for IIED, Plaintiff must prove four elements: 1) that Defendant either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to Plaintiff; 2) that Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) that Defendants' actions were the proximate cause of Plaintiff's psychic injury; and 4) that the mental anguish suffered by Plaintiff is serious and of a nature that no reasonable person

could be expected to endure. *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997). Plaintiff's claim rests entirely upon the City's investigation into the source of the anonymous email and ultimate decision to terminate his employment. Under *Ekunsumi* "a former employee may not recover damages from his previous employer for the intentional infliction of emotional distress allegedly caused by the employee's discharge from his at-will employment." 698 N.E.2d at 506. Therefore, the only grounds available for Plaintiff's IIED claim must be found in the investigation of his email. Plain-clothed detectives traced the email to its source and showed up to question Plaintiff. Despite Plaintiff's apparent argument that this questioning by Mason police at his workplace essentially equated being falsely accused of a crime, the record shows that he was only told that police were investigating a crime and that he was a suspect. After this single interview, Plaintiff had no further contact with police. The Prosecutor even assured Plaintiff's attorney that the matter was closed.

The first element of an IIED claim is not met here because Defendants Lahrmer and Drumm did not know Plaintiff and there is no basis that they harbored any malice against him (doc. 19). Defendants could not have been motivated by any malice against Plaintiff until the email had been traced because he sent his message anonymously.

The Court further notes that Defendants' alleged abuse of police power in determining the source of the email, though possibly inappropriate, was not automatically "extreme and outrageous." *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983). Finally, the Court finds that the record does not establish that Plaintiff has suffered serious mental anguish of a nature that no reasonable person could be expected to endure. There is no occasion for the law to intervene every time someone's feelings are hurt. The facts show that Plaintiff continued to perform at his insurance company job, that he received no negative performance reviews or discipline, and that just months after his termination, he campaigned for City Council (doc. 19). These undisputed facts further warrant summary judgment in Defendants' favor on Plaintiff's IIED claim.

## V. The Public Policy Claim

■■■■■ The public policy of the State of Ohio provides an exception to the doctrine of employment at will. An employer cannot terminate an employee for a reason that violates the public policy of the State of Ohio. *Painter v. Graley,* 70 Ohio St.3d 377, 382–83, 639 N.E.2d 51 (1994). Defendants correctly argue that because there has been no violation of Plaintiff's First Amendment rights nor of the Whistleblower Law, there has been no violation of the public policy of the State of Ohio. Consequently, Defendants are entitled to summary judgment on Plaintiff's Public Policy Claim.

## VI. Immunities

Defendants also argue that City Manager Lahrmer and Chief Drumm have qualified immunity on all claims because they were performing discretionary functions that did not violate clearly established constitutional rights of which a reasonable person would have known. The Court need not reach the question of Defendants' immunities, having determined that Plaintiff's claims are all subject to summary judgment.

## CONCLUSION

The Court finds that as a matter of law, the contents of Plaintiff's email did not

constitute a matter of public concern. The Court further finds that Plaintiff's email did not address allegedly illegal activity, and therefore Plaintiff did not have protection from employment retaliation under Ohio's Whistleblower Act. Defendants are therefore entitled to summary judgment on Plaintiff's Section 1983 Claim, Whistleblower Claim, and Public Policy Claim.

The Court finds that Plaintiff's IIED claim fails because there are no facts showing that Defendants harbored the requisite malice toward him, nor that the investigation conducted was outrageous. Additionally, Defendant City of Mason is entitled to immunity from prosecution for an IIED claim under Ohio law.

Accordingly, the Court hereby GRANTS Defendants City of Mason's, Scot Lahrmer's, and H. Michael Drumm's Motion for Summary Judgment (doc. 13) and DISMISSES this case.

SO ORDERED.