RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GARY D. YESCHICK,

    *Plaintiff-Appellant,*

    *v.*

    No. 06-4649

NORMAN Y. MINETA, Secretary of Transportation,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-02510—Lesley Brooks Wells, District Judge.

Argued: October 31, 2007

Decided and Filed: April 1, 2008

Before: BATCHELDER, MOORE, and COLE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Gino Pulito, PULITO & ASSOCIATES, Elyria, Ohio, for Appellant. William J. Kopp, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Gino Pulito, PULITO & ASSOCIATES, Elyria, Ohio, for Appellant. Marcia W. Johnson, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

    COLE, J., delivered the opinion of the court, in which MOORE, J., joined. BATCHELDER, J. (p. 8), delivered a separate dissenting opinion.

---

**OPINION**

---

    R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Gary D. Yeschick brought suit against Defendant-Appellee Norman Y. Mineta, the former Secretary of the United States Department of Transportation,[1] who oversees operations of the Federal Aviation Administration ("FAA" or "Agency"), alleging that the FAA failed to rehire him due to his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA" or "Act"). Pursuant to 29 C.F.R. § 1614.105, an applicant for federal employment claiming discrimination under the ADEA

---

[1]Yeschick sued Mineta in his official capacity as Secretary of Transportation. Mineta has since resigned and his successor, Mary E. Peters, is automatically substituted pursuant to Federal Rules of Appellate Procedure Rule 43(c)(2).

must consult the agency's Equal Employment Opportunity ("EEO") counselor within forty-five days of the alleged discriminatory act. The district court, granting summary judgment in favor of the FAA, found that because the FAA labeled Yeschick's application as "inactive" in 2000, and because Yeschick did not contact the EEO counselor until 2002, Yeschick failed to meet this administrative requirement. We conclude that there is a genuine issue of material fact as to whether Yeschick was an active applicant when he contacted the EEO counselor in 2002, and we therefore **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings.

## I. BACKGROUND

Yeschick was employed by the FAA as an Air Traffic Control Specialist (hereinafter, "Controller") between 1974 and 1981 at the Cleveland Air Route Traffic Control Center (hereinafter, "Cleveland Control Center"). In 1981, President Reagan terminated Yeschick along with 10,438 fellow members of the Professional Air Traffic Controllers Organization ("PATCO") after they refused to return to work during a labor strike. Twelve years later, in 1993, President Clinton, by Executive Order, lifted the re-hiring ban imposed by President Reagan on these employees, thereby allowing the former PATCO members who had participated in the strike to apply for re-employment with the FAA. The FAA issued a "Recruitment Notice" for "reinstatement and transfer eligible applicants who were separated from the [FAA] as result of the [PATCO] job action of 1981." (Joint Appendix ("JA") 124.) Interested applicants were directed to submit the appropriate forms within a forty-five day application window, September 1, 1993 to October 15, 1993. Yeschick timely submitted an application, dated October 7, 1993, noting Cleveland as his geographical preference for employment. He was forty-two years of age at that time.

Thereafter, the FAA's Human Resources office, located in Oklahoma City, compiled an "inventory" of the approximately 5,000 applications submitted by former PATCO members. When an FAA facility had vacancies and the authority to hire, a regional office could request applicants from this list, as well as from other applicant pools, who had noted the corresponding geographic preference.

There was a hiring freeze affecting all applicants seeking employment as Controllers in the Great Lakes Region from 1993 to 1996. In March 1997 and January 1998, after the freeze terminated and hiring of Controllers was reopened, the FAA Human Resources office provided the Great Lakes Regional Office with lists of former PATCO applicants interested in positions at the Cleveland Control Center. The referral lists contained 160 names and applications in 1997 and 173 names and applications in 1998. The Cleveland Control Center selected four former PATCO controllers for rehire from the 1997 list and nine from the 1998 list. Yeschick appeared on both lists, but he was not selected for employment. After 1998, the Cleveland Control Center continued to hire individuals for Controller positions, but selected no former PATCO applicants. Further, the FAA Human Resources office did not issue any PATCO referral list to the Cleveland Control Center after 1999; the individuals hired were selected from other applicant pools.

After filing his application for re-employment in 1993, Yeschick had no further contact with the FAA regarding the status of his application. Despite moving twice after applying, once in 1994 and again in 1997, he did not notify the FAA of his change of address on either occasion. On June 1, 1995, the FAA sent Yeschick a letter to inform him of possible contract employment opportunities. The letter was returned to the FAA marked "Return to Sender - Forwarding Order Expired." In 2000, the FAA reviewed the PATCO inventory "to reduce the size of the referral lists by eliminating those applicants where evidence indicated that current contact information for the applicant was not available." (JA 121.) Because the FAA lacked Yeschick's current address, it determined Yeschick's application to be "inactive."

On September 21, 2002, another former PATCO controller informed Yeschick that the Cleveland Control Center had hired applicants as Controllers who were younger and less qualified than Yeschick. Because Yeschick believed that he was as qualified, if not more qualified, than the younger applicants, and because Yeschick claims that he had no reason to believe that he may have been discriminated against because of his age prior to this conversation on September 21, 2002, he contacted an EEO counselor on October 2, 2002 to report the FAA's alleged discriminatory hiring practices. He subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination in violation of the ADEA.

Notably, in the forty-five days preceding Yeschick's contact with the EEO counselor, the FAA hired several younger individuals to fill Controller positions in the Cleveland Control Center: three were hired on September 19, 2002, two at age twenty-three and one at age twenty-two; two were hired on September 30, 2002, both at age twenty-seven.

On March 21, 2003, the EEOC dismissed Yeschick's complaint for failure to initiate contact with an EEO counselor within forty-five days of the alleged discriminatory event, as required under 29 C.F.R. § 1614.105(a)(1). On appeal, the EEOC affirmed. Yeschick timely brought the instant action in federal district court, claiming that the FAA violated the ADEA when it refused to employ him because of his age and because it generally followed a practice of refusing to hire as Controllers persons who were forty years of age or older. The district court first granted the FAA's motion to bifurcate discovery in order to resolve the standing and exhaustion issues raised by the FAA in a prior unsuccessful motion to dismiss. The district court then granted the FAA's subsequent motion for summary judgment,[2] concluding that although Yeschick had standing to sue, he "ceased to have a valid, active application with the FAA as of 2000." *Yeschick v. Mineta*, No. 1:03 CV 02510, 2006 WL 2794795 at *4 (N.D. Ohio Sept. 27, 2006). Thus, the court reasoned, "at the very latest, the forty-five day clock would have started ticking when the FAA decided Mr. Yeschick was no longer a valid candidate for employment back in 2000." *Id.* Because Yeschick did not contact the EEO counselor until 2002, the district court concluded that he failed timely to exhaust his administrative remedies in accordance with 29 C.F.R. § 1614.105(a). The district court went on to hold that because Yeschick was not a valid applicant, he also could not establish a prima facie case of age discrimination.

Yeschick timely appealed to this Court. He argues that: 1) the district court erred in concluding that Yeschick was not an applicant in 2002 and that he, therefore, did not timely contact the EEO counselor; 2) the district court abused its discretion when it determined that Yeschick failed to establish a prima facie case of age discrimination when the court previously limited discovery to issues of standing and exhaustion of administrative remedies; and 3) regardless of the limited discovery, Yeschick has established a prima facie case of discrimination.

## II. ANALYSIS

### A.

We review de novo a district court's grant of summary judgment. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears

---

[2]The FAA's motion was labeled as a motion to dismiss and alternative motion for summary judgment. Because both parties submitted materials outside the pleadings, including sworn declarations from witnesses and deposition transcripts, the district court properly decided the motion as a motion for summary judgment.

the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B.**

Prior to bringing an action in district court, an applicant for federal employment claiming discrimination under the ADEA must consult the agency's EEO counselor within forty-five days of the alleged discriminatory act. 29 C.F.R. § 1614.105. Failure to comply with the administrative exhaustion requirements "is cause for dismissal by the agency, *see* 29 C.F.R. § 1614.107(a)(2) (2003), as well as by the district court." *Steiner v. Henderson*, 354 F.3d 432, 434-35 (6th Cir. 2003). However, "the forty-five day filing period is not a jurisdictional prerequisite, and can be tolled where principles of equity demand it." *Id.* (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Yeschick contacted the EEO counselor on October 2, 2002. Therefore, unless an equitable tolling doctrine applies, only those alleged discriminatory acts that occurred after August 19, 2002—forty-five days prior to October 2, 2002—are actionable.

Yeschick claims that the continuing-violation doctrine applies because he alleges that the FAA engaged in an ongoing pattern of unlawful discrimination, rendering all discriminatory conduct occurring before and after the forty-five day time limit actionable. In addition, he argues that because he did not reasonably suspect discrimination until after he spoke to the fellow ex-PATCO member on September, 21, 2002, equitable tolling applies. Further, Yeschick claims that even if the Court rejects these first two arguments, because the Cleveland Control Center hired five younger individuals within those forty-five days, he timely satisfied the exhaustion requirements at least with respect to those five hiring decisions.

The FAA counters, and the district court agreed, that the Agency's decision to "inactivate" Yeschick's application in 2000 was tantamount to a decision not to consider him for re-employment and Yeschick's EEO counselor meeting was well beyond forty-five days from that act. In other words, the FAA identifies the "inactivation" as the last possible discriminatory act relevant to Yeschick's application for employment. The FAA reasons that because this was a discrete employment act, the continuing-violation doctrine does not apply. Further, the FAA argues that even if Yeschick did not learn until 2002 that the FAA was overlooking PATCO applicants in favor of younger individuals, he was nevertheless untimely because he did not exercise due diligence in pursing his rights by following up on his application. Rather, the FAA asserts, Yeschick abandoned his application for re-employment when he failed to update his address on file with the Agency. The FAA altogether ignores Yeschick's final argument pertaining to the younger applicants hired within forty-five days of his EEO meeting. The district court, however, addressed this claim and found that after 2000, there was no discriminatory act from which to start the forty-five day clock—not even the September 2002 hirings—because Yeschick was no longer an applicant who could experience an adverse employment action.

The threshold issue for this Court, therefore, is whether Yeschick remained an applicant after the 2000 "inactivation." If Yeschick was no longer an applicant as of 2000, then he could not have experienced any adverse employment action within the forty-five days before he contacted the EEO counselor in 2002. If, however, Yeschick was an applicant in 2002 when he contacted the EEO counselor, then we must further determine whether Yeschick can pursue his claims relating to acts outside of the limitations in addition to those acts within the limitations.

According to Patricia Johnson, a Personnel Management Specialist in the FAA Human Resources office in Oklahoma City, in early 2000, the Human Resources department reviewed the lists of former PATCO applicants and reduced the size of the lists by invalidating applications "where evidence indicated that current contact information for the applicant was not available." (JA 121.) Because Yeschick's records indicated that the FAA did not have a current address for

him—based on the 1995 mailing that had been returned—Johnson stated that Yeschick's application was identified as inactive and allegedly would not have been included on any PATCO referral list had any had been sent out after the review. Johnson also testified that had Yeschick called the FAA at any point to inquire about the status of his application, he would have been asked about his current address and his status as an applicant would have been changed to "active" upon his request.

Yeschick argues that the FAA's reliance on his expired address is merely a red herring to distract from the real issue: that after 1999, the FAA did not even consider the PATCO list when hiring for Controller positions, and, therefore, whether he had an "inactive" notation in 2000 is immaterial. Further, Yeschick argues that, in any event, there is a genuine issue of material fact as to whether he was still an active applicant when he filed his EEOC complaint, despite the FAA's alleged "inactive" notation. We agree.

The FAA and the district court rely on this Court's decision in *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620 (6th Cir. 1987), to support the conclusion that Yeschick did not have a valid application after 2000. In *Williams*, this Circuit addressed the issue of an "invalid" application, though in the context of establishing a prima facie case for employment discrimination—an issue that we have not yet reached. Williams brought a failure-to-hire case alleging that he was denied a position with the defendant-company because of his race. Although not written, the company had a policy that employment applications should be retained for a period of one year and then discarded as invalid. Williams made it a practice to visit the plant from time to time to check on his application and update it with new information. The plant, however, discarded his application one year after he submitted it, and did not renew the date of application after each update. At the time that the hiring in question occurred, Williams therefore did not have an application in the company's files. We held that the company's one-year application retention policy was not discriminatory because it was applied evenhandedly without regard to race, and, further, that the company was under no obligation to inform applicants when their applications had expired. The Court explained:

> The record contains no indication that any applicant assumed his application would remain active in perpetuity, and the fact that a number of applicants kept returning to the plant to check on their applications – some more frequently than Mr. Williams – strongly suggests that they entertained no such assumption. Whatever the applicants may have assumed, moreover, the policy systematically excluded from consideration all whose applications were more than a year old, white as well as black. Whether or not the policy ran counter to the assumptions of the applicant, its systematic application hardly constituted selective use to discriminate against blacks.

*Williams*, 819 F.2d at 627. That Williams had updated his application within the year had no consequence because he was merely updating the original application, which was discarded after one year, pursuant to the policy. The Court held that Williams's application was never rejected, "it simply was not timely filed." *Williams*, 819 F.2d at 629. Because Williams was not an applicant at the time of the hiring in question, therefore, he experienced no adverse employment action.

The circumstances surrounding the "inactivation" of Yeschick's application are much different from those in *Williams*. First, the *Williams* Court hangs its hat on the fact that the defendant-company acted under a *systematic* policy of invalidating year-old applications. Here, there was no official policy under which the FAA Human Resources office acted when it deemed Yeschick's application inactive. Johnson testified that the list was "reviewed" in 2000, but did not state that there was a policy of doing so after a certain number of years or, significantly, with lists of applicants from other hiring pools such as the technical programs from which many of the younger employees were hired. *See Grant v. Harcourt Brace Coll. Publishers*, 191 F.3d 452, 1999 WL 717982, *4 (6th Cir. 1999) (table decision) (explaining that "*if an employer follows a firm*

*hiring procedure*, the employer is allowed to enforce the policy" and holding that a late expression of interest in a position failed to qualify as an application for the open position where the company's hiring procedure included a specific resume collection and interview process (citing *Williams*, 819 F.2d at 629) (emphasis added)). Without such systematic policy—a policy marked by thoroughness and regularity—we cannot assume, at this point, that the FAA did not selectively use the "inactivation" process to discriminate against older applicants.

Further, unlike Williams, who had not submitted his application during the appropriate one-year window, Yeschick timely submitted his application during the period set forth in the Recruitment Notice issued by the FAA. Though the FAA states that Yeschick did not act with due diligence after submitting his application because he failed to follow up with the FAA, the Recruitment Notice stated that "[e]ligible candidates will be ranked as vacancies occur" and that referral of candidates to selecting officials could be made "at any time after the closing date." (JA 124.) Therefore, unlike individuals who submitted their applications to the company in *Williams*, the former PATCO applicants could rationally believe that their applications would remain active "in perpetuity" because the notice stated they could be considered *at any time* after the closing date *as vacancies occurred*, and there existed no systematic policy under which the FAA would discard their applications. In other words, unlike the typical employment situation where an individual applies for a particular opening, which is then filled by that applicant or someone else, the PATCO applicants applied for Controller positions that could become vacant at any time. Therefore, although Yeschick did not follow up on his application, the FAA gave him reason to believe that his application would remain on file for consideration as Controller positions became available.

In addition, because the 1993 Recruitment Notice was the only announcement made to recruit former PATCO controllers—and it appears that it was the only opportunity for former PATCO members to reapply to the FAA—the list of former PATCO applicants was not growing over the years necessitating a "clean-up" as may have been appropriate in *Williams* where individuals were continually applying year-round. To the extent that the FAA argues that there was such a "cleaning" policy in 2000, the fact that the list was never issued for the regional facilities to consider after the "clean-up" undermines the existence of such policy and the need for such action. The testimony of Joyce Brand, the FAA Great Lakes Hiring Manager, further undermines the existence of such a policy. She stated that there had been occasions in her years of experience when she attempted to contact candidates with outdated contact information by looking beyond the primary residence and phone number listed on the application and using, for instance, the applicant's reference information instead. If there *had* been a systematic policy of eliminating applicants without current contact information, Brand would have presumably been able to reach easily any applicant selected for employment. Instead, some of the applicants she selected had outdated contact information. The fact that such individuals were selected for employment, even though they had outdated contact information, discredits the FAA's so-called policy of invalidating applicants who have not updated their applications.

In addition—in direct contradiction to Johnson's testimony—Rick Williams-Gaylor, Johnson's predecessor, specifically testified that although he would "inactivate" applicants who had passed away or who wrote in stating they were no longer interested in being considered for Controller positions, if correspondence came back undeliverable, the applicant would still be considered "active." Williams-Gaylor was the first Human Resources Specialist to work with the PATCO list, when it was necessarily at its largest, and found no need to reduce the list by inactivating applicants with outdated addresses. The FAA offers no reason why it decided to cull the list in 2000 when the previous list had been submitted to hiring managers without issue. Again, the 2000 culling is particularly puzzling because the FAA "cleaned up" the PATCO referral list, yet never referred the list to the Cleveland Control Center after 1999 to consider for Controller positions.

Finally, we note that the "policy" as stated by Johnson was to invalidate candidates for whom the FAA had no available *contact* information, but Yeschick's "invalidation" was based solely on the 1995 letter marked "return to sender." There is no evidence that the FAA determined whether it, in fact, did not have *any* current contact information: i.e., no one checked Yeschick's phone number, current work address, or references, all of which remained accurate on his application. Although the FAA did issue a notice of receipt of application, in which it directed applicants to contact the department if their contact information had changed, the application that Yeschick completed contained no such instruction or notice of a policy of invalidating applications.

Overall, viewing the facts in the light most favorable to Yeschick, as we must, there is a genuine issue of material fact as to whether he was an "active" applicant after 2000. *See McFarland v. Henderson*, 307 F.3d 402, 408 (6th Cir. 2002) ("We must construe all of the facts at the summary judgment stage of the case in [the plaintiff's] favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986), in deciding whether [he] complied with the 45-day grievance deadline as a precondition to bringing suit."). Therefore, we reverse the district court's decision because, given the genuine issue of material fact regarding the status of his application in 2002, Yeschick can, at a minimum, challenge his failure to obtain the position of one of the younger individuals hired as a Controller in the forty-five days immediately preceding his administrative complaint.

## C.

Yeschick also claims that both the equitable tolling and the continuing-violation doctrines apply, and that these doctrines permit him to challenge the FAA's failure to hire, or even consider, PATCO applicants both before and after the limitations period. However, because discovery was limited to the standing and exhaustion issues involving the alleged "inactivation" of Yeschick's application, we decline to reach these issues and direct the district court to determine in the first instance whether such doctrines apply.

## D.

Yeschick further argues that the district court abused its discretion by determining that Yeschick failed to establish a prima facie case of age discrimination when the court previously limited discovery to issues of standing and exhaustion of administrative remedies, and that, in any event, Yeschick can establish a prima facie case. Although the district court did address the merits of Yeschick's claim before the parties had conducted discovery on the merits, it based its decision solely on its exhaustion finding, i.e., that Yeschick was not an applicant at the time the alleged discriminatory acts occurred. It did not discuss any other element of the prima facie case. In light of the fact that there is a genuine issue of material fact regarding whether Yeschick was an applicant in 2002, and discovery was tailored to allow evidence relating to the exhaustion issue only, we reverse the district court's decision and remand for the district court to determine in the first instance whether Yeschick meets the remaining elements of the prima facie case.

## III. CONCLUSION

For these reasons, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. I respectfully dissent. First, it is not so clear to me as it apparently is to the majority that Yeschick's claim is not time barred. The substance of Yeschick's argument against a time bar is that, despite his having done nothing whatsoever for nine years to inquire into vacancies or to update his own application he is entitled to bootstrap from the most recent hirings his claim that younger people were now being hired. But even if his ADEA claim is not time barred, I do not agree that there remains any genuine issue regarding the facts material to the third element of Yeschick's prima facie case, namely, that he applied for available positions or that the employer was otherwise obligated to consider him for those positions. *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989); *see also Pucci v. BASF Corp.*, 55 F. App'x 243, 245 (6th Cir. 2002). The testimony of Joyce Brand that the majority relies on does not help Yeschick. Brand testified that she had, on occasion, attempted to contact individuals whose information was outdated, but those individuals were applicants who had been selected for employment, not simply individuals whose names were on the applicant lists. Nor does the testimony of Williams-Gaylor help Yeschick. Williams-Gaylor left his position as manager of the PATCO data base two years before the FAA decided to cull the PATCO applicant list. In short, Yeschick's claim is premised on his belief, which is unsupported by any evidence, that his application remained active. I would affirm the district court's grant of summary judgment to the Secretary.