**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0732n.06

No. 09-3017

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 09, 2009**
LEONARD GREEN, Clerk

TAMRA BALDING-MARGOLIS;                    )
STEVEN MARGOLIS,                           )
                                           )
    **Plaintiffs-Appellants**,                )
                                           )
                                           )   ON APPEAL FROM THE
v.                                         )   UNITED STATES DISTRICT
                                           )   COURT FOR THE NORTHERN
                                           )   DISTRICT OF OHIO
CLEVELAND ARCADE, dba                      )
HYATT REGENCY CLEVELAND;                    )
et al.,                                     )
                                           )   **O P I N I O N**
                                           )
    **Defendants-Appellees.**                  )
                                           )

Before:  O'CONNOR,[*] Associate Justice (Ret.); MOORE and COOK, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Tamra Balding-Margolis

("Balding-Margolis") appeals from the district-court order granting summary judgment in favor of

Defendants-Appellees Hyatt Corporation and several Hyatt employees (collectively "Hyatt") with

regard to her claims of sexual harassment, wage discrimination, gender discrimination, retaliation,

wrongful discharge, intentional infliction of emotional distress, and negligent hiring. She also

appeals the district-court order granting Hyatt's motion to strike her post-deposition affidavit. For

the reasons explained below, we **AFFIRM** the district court's judgment.

---

[*]The Honorable Sandra Day O'Connor, Associate Justice (Ret.) of the United States Supreme
Court, sitting by designation.

# I. BACKGROUND

The Hyatt Regency Cleveland at the Arcade hired Balding-Margolis, a forty-five year old female, to work as a server at the restaurant "The 1890." During her tenure, Balding-Margolis's immediate supervisor was Joseph Schultz, and Schultz's immediate supervisor was Joseph Serreyn. Balding-Margolis was a member of UNITE HERE Local 10, and a collective-bargaining agreement ("CBA") governed Balding-Margolis's employment. In addition to her serving duties, Balding-Margolis worked as a trainer for Hyatt's on-the-job training program. The CBA was silent as to the pay rate for training, but prior to accepting the position, Balding-Margolis agreed to accept an alternative pay arrangement.

Upon employment, Balding-Margolis received copies of several documents related to employee behavior. The first was Hyatt's Policy Against Harassment, which explicitly forbade harassment and retaliation on numerous grounds including gender and age. Balding-Margolis testified that she understood that she was entitled to bring concerns under the policy to her immediate supervisor, the Director of Human Resources, the Hyatt General Manger, or a Hyatt hotline. Balding-Margolis also received a copy of Hyatt's Associate Handbook, which outlined the "open door policy" at Hyatt. That policy stated that any employee was entitled to bring a complaint about any work-related problem to his or her immediate supervisor, the Director of Human Resources, or the General Manager. Balding-Margolis also received a copy of the Rules and Regulations for Cash Handling Personnel ("Cash Handling Rules"), and she agreed to follow the instructions set forth therein. Balding-Margolis was aware, in fact, that failure to follow the Cash Handing Rules could result in immediate termination. Relevant to this appeal, the Cash Handling Rules generally prohibited an employee from altering a guest check; required that an employee follow proper

2

procedures; and prohibited an employee from handling checks, cash, and credit cards in an improper manner. The restrictions on altering a guest check included prohibitions on changing the tip amount or closing out a check that differed in any way from the customer's signed receipt.

Despite her knowledge of the Cash Handling Rules, Balding-Margolis committed various violations. In October 2005, she was issued a warning when two guests left the restaurant without providing a valid form of payment. In January 2006, Balding-Margolis received another warning because of a large cash variance following her shift. In May 2006, Balding-Margolis received a third warning—a "Final Written Warning"—for adding an additional eighteen-percent gratuity without the customer's permission.

On May 9, 2007, at the close of the shift, Schultz noted that Balding-Margolis's gratuities equaled 32.29% of her total sales before the inclusion of cash tips. The high tips-to-sales ratio was suspicious and caused Schultz to audit Balding-Margolis's transactions that day. Schultz concluded that there were problems with one-third of Balding-Margolis's sales, including receipts for discounted meals that lacked the required discount coupons; ten checks without a signed copy of the room charge, credit card, or other documentation; and two unsigned receipts with listed tips that exceeded the actual food-sales amount. Schultz conducted an audit of the two workers with whom Balding-Margolis had been serving that day but found no similar discrepancies.

Based on the number of problems with Balding-Margolis's transactions, Schultz conducted an additional audit of Balding-Margolis's shifts on April 25, May 1 through 4, and May 8, 2007. The Hyatt Controller, Michael Ciuni, oversaw this audit. When the audit revealed additional policy violations, Schultz and the Human Resources Director, Wendy Leuders, recommended that Hyatt terminate Balding-Margolis. The General Manager, Stephen Stewart, and Ciuni both approved the

3

termination decision after reviewing the audit documentation. Schultz and Leuders met with Balding-Margolis on May 12, 2007, and notified Balding-Margolis of her termination for violations of the Cash Handling Rules and misappropriation of hotel funds. Balding-Margolis was given the opportunity to explain the various discrepancies, but she failed to do so.

During the termination meeting, Balding-Margolis made general complaints regarding the way that Schultz had administered the staff, but she made no complaints of sex- or age-based discrimination or harassment. Following her termination, Hyatt continued auditing Balding-Margolis's receipts for five dates in April 2007, revealing additional discrepancies. Because Balding-Margolis had alleged during her termination meeting that Schultz was attempting to get her fired and that he had papered her file and/or stolen the supporting documentation that she needed to explain the discrepancies, Hyatt conducted an audit of Balding-Margolis's transactions during a two-week period prior to Schultz's employment at Hyatt. That audit revealed similar cash-handling problems. Hyatt also conducted an audit of all the checks closed out by the servers on April 25, May 1 through 4, and May 8, 2007, and found that none of them had discrepancies or cash-handling violations similar to Balding-Margolis's discrepancies.

Balding-Margolis[1] filed suit against Hyatt[2] on October 30, 2007 in the U.S. District Court for the Northern District of Ohio.[3] Balding-Margolis's complaint asserted eleven state and federal claims. Following discovery, including a sworn deposition by Balding-Margolis, Hyatt submitted a motion for summary judgment. In support of her brief in opposition, Balding-Margolis submitted a sworn affidavit, which Hyatt moved to strike. The district court granted summary judgment and also granted Hyatt's motion to strike Balding-Margolis's affidavit to the extent that it conflicted with her deposition testimony. Balding-Margolis filed a timely appeal raising numerous claims.

## II. ANALYSIS

"We review de novo a district court's grant of summary judgment." *Yeschick v. Mineta*, 521 F.3d 498, 502 (6th Cir. 2008). Summary judgment is warranted where "the pleadings, the discovery

---

[1] Balding-Margolis's husband, Steven Margolis, was a plaintiff in the case filed in the district court based on his assertion of a claim for loss of consortium. Although Steven Margolis is listed as a party to the instant appeal, the brief on appeal does not present argument regarding the dismissal of the loss-of-consortium claim, and thus we refer to Balding-Margolis as the sole appellant. *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) ("Issues which were raised in the district court, yet not raised on appeal, are considered abandoned and not reviewable on appeal.").

[2] Balding-Margolis originally named Cleveland Arcade, LLC; Global Hyatt Corporation; Hyatt Corporation; Old Arcade, LLC; Joey Schultz; Stephen Stewart; Wendy Lueders; and Donald Murtaugh as defendants. The district court dismissed Cleveland Arcade, LLC; Old Arcade, LLC; and Global Hyatt Corporation from the suit after finding none of them were Balding-Margolis's employer. Balding-Margolis has failed to appeal the district court's dismissal of these entities, and the issue is thus waived. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005). Hyatt Corporation and the above-mentioned Hyatt employees are the only remaining defendants.

[3] Balding-Margolis initially filed a timely charge of discrimination with the EEOC, which issued a right to sue letter. The union also filed a grievance on her behalf for unjust termination, which it later withdrew. That grievance makes no mention of sexual harassment or discrimination. In response to the EEOC complaint and union grievance, Leuders conducted an investigation into Balding-Margolis's allegations of harassment and discrimination. Following a series of interviews with several of Balding-Margolis's former co-workers, Hyatt was unable to substantiate the claims. Hyatt did, however, issue Schultz a written warning for making unprofessional comments.

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the burden of proving that there are no genuine issues of material fact," *Yeschick*, 521 F.3d at 502, but the nonmoving party "must present more than a mere scintilla of evidence in support of [its] position" to avoid summary judgment. *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995).

## A. Motion to Strike

Balding-Margolis claims that the district court improperly struck large portions of her post-deposition affidavit that were material to her claims and not directly contradictory to her deposition testimony. "[W]e review the district court's refusal to consider a portion of [an] affidavit for an abuse of discretion." *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Thus, when determining whether to strike a post-deposition affidavit, the district court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L., v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). If so, then the court must strike the affidavit "unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.*

After an extensive review of the record, we conclude that the district court's decision to strike the portions of the affidavit that directly conflicted with Balding-Margolis's deposition testimony was not an abuse of discretion. Our review of the scope of the district court's order, however, is complicated by the fact that the court did not identify by paragraph number the specific portions of

6

the affidavit that it believed directly conflicted with the deposition testimony. Instead, the court highlighted certain phrases that it found directly contradictory and summarized the remaining evidence once it had disregarded the portions of the affidavit that it determined were in conflict. Based on the evidence that the district court recounted as remaining, we believe the district court may have swept too broadly in excluding statements about the severity and pervasiveness of the alleged sexual harassment, as well as information about similarly situated co-workers. Nonetheless, any error is ultimately harmless. Even considering that evidence, as we do below, we conclude that Balding-Margolis fails to raise a material question of fact sufficient to survive summary judgment on any of her claims.

## B. Age-Discrimination Claims

Balding-Margolis contests the grant of summary judgment on her age-discrimination claims under the Age Discrimination in Employment Act ("ADEA") and the Ohio Revised Code.[4] She presents no direct evidence of age discrimination but argues that she is able to make out a prima facie case with circumstantial evidence. Balding-Margolis is mistaken; she is unable to show that she was "replaced by a younger worker," *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008), or that a similarly situated employee was treated more favorably. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Although a twenty-six year old male bartender "was put on the schedule more on the restaurant side" after her termination, Pl. Dep. at 196-98, the employee was already working in the lounge when Balding-Margolis was fired, and there is no evidence that he was relieved of his duties or reassigned to perform Balding-Margolis's duties. "A

---

[4]Ohio Rev. Code § 4112.02 and § 4112.99. Age-discrimination claims under Ohio law generally are analyzed under the same standards as federal AEDA claims. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998).

person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (quotation omitted).

Balding-Margolis is also unable to establish that younger similarly situated employees were treated more favorably. As noted by the district court, the Sixth Circuit requires comparator employees to be similarly situated "in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original). Balding-Margolis submitted evidence of different treatment in the general disciplinary context. She claims that the younger employees' practice of marrying alcohol and their admitted but unproven failure to turn in receipts were sufficiently serious to merit comparison to the disciplinary violation that led to her termination—the cash-handling-policy violation and misappropriation of funds. *See Wright*, 455 F.3d at 710. This is not the case. Marrying alcohol may be a violation of Ohio law, but Balding-Margolis never engaged in the practice and was never disciplined for not participating. The fact that Balding-Margolis was terminated for engaging in an illegal practice does not automatically make marrying alcohol and Balding-Margolis's infraction comparable. Misappropriation of funds and marrying alcohol are different circumstances involving distinguishable conduct. *See Ercegovich*, 154 F.3d at 352; *Wright*, 455 F.3d at 710.

Balding-Margolis's allegations that her younger co-workers violated the Cash Handling Rules by failing to turn in their receipts or falsifying paperwork are also insufficient to satisfy her prima facie case. Balding-Margolis states only that she just assumed her male co-workers were

8

violating the policy but has presented no evidence that they actually did. Although Balding-Margolis did present evidence indicating that two younger female co-workers had violated the cash-handling procedures by not placing their receipts "in the right place," Pl. Dep. at 198, there is no record evidence that those receipts were altered or that the co-workers' actions were an intentional attempt to misappropriate funds and engage in fraudulent behavior.[5] *See id.* at 198-99. In sum, the co-workers' actions were sufficiently distinguishable from Balding-Margolis's. *See Ercegovich*, 154 F.3d at 352; *Wright*, 455 F.3d at 710.[6] Thus, we conclude that the district court did not err in granting summary judgment on the age-discrimination claims.

## C. Wage Discrimination

Balding-Margolis next alleges that the district court improperly granted summary judgment on her wage claims under the Equal Pay Act ("EPA"), ADEA, Title VII, and Ohio Revised Code § 4112 because (1) she was paid less than other younger and/or male employees for her role as a server-trainer and (2) she was entitled to minimum wage (as opposed to her tipped rate) during training. Balding-Margolis fails to provide sufficient evidence to avoid summary judgment under any statutory provision.

---

[5]The district court improperly concluded that Balding-Margolis's post-deposition affidavit statements about one female co-worker could not be considered in determining "whether a younger employee was treated more favorably." Dist. Ct. Order at 11-12. Despite the lack of detail in Balding-Margolis deposition concerning this co-worker, nothing in the affidavit directly contradicts Balding-Margolis's deposition testimony—the affidavit simply provides additional information. Given that the two employees were not similarly situated, however, the error was harmless.

[6]Even assuming a prima facie case, we conclude that Hyatt is still able to "articulate [a] legitimate, nondiscriminatory reason for its actions," *Hollins v. Atl. Co.*, 188 F.3d 652, 658 (6th Cir. 1999) (quotation omitted), and Balding-Margolis has not presented sufficient evidence to raise a question of fact as to whether Hyatt's reason for her termination—misappropriation of funds and cash-handling violations—is pretextual. *Id.*

9

With regard to her EPA and ADEA claims, Balding-Margolis has presented no evidence that she was paid less than co-workers outside of her protected class "'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)); *see also Mickey*, 516 F.3d at 522 (applying the same standard to an ADEA claim). Balding-Margolis concedes that she was the only server-trainer in Cleveland, and she has presented no evidence that other non-protected employees held "substantially equal" jobs and were paid more. *Beck-Wilson*, 441 F.3d at 362. Balding-Margolis further concedes that those employees who were paid a higher rate had greater seniority and were being paid pursuant to the provisions of the CBA.[7]

Balding-Margolis also fails to establish a prima facie case of wage discrimination under Title VII or Ohio Revised Code § 4112.02. "[A] Title VII plaintiff suing for wage discrimination (and, by extension, a plaintiff suing under Ohio Rev. Code Ann. § 4112.02) is not required, as part of her

---

[7]The one piece of evidence that Balding-Margolis sets forth regarding varying wages is a conversation that she had with a Hyatt Corporate Trainer. Balding-Margolis alleges that during their meeting the individual informed Balding-Margolis that trainers at other hotels were paid more. First, it is unclear whether server-trainers outside Cleveland are valid comparators for a wage-discrimination claim, which requires equal pay for equal work in the same establishment. The EPA's governing regulations note that "establishment" refers to a distinct physical place of business, such that each physically separate place of business is ordinarily considered a separate establishment. 29 C.F.R. § 1620.9. This definition leaves open the possibility of treating two physical locations as one establishment in cases where, for example, they are operationally indistinguishable. *Id.*; *see also Mowery v. Rite Aid Corp.*, 40 F. App'x 926, 927 (6th Cir. 2002) (unpublished). Balding-Margolis, however, has presented no evidence regarding the operational structure of Hyatt and whether locations outside Cleveland can constitute the same establishment for EPA purposes. Furthermore, even if outside-Cleveland locations could constitute the same establishment, Balding-Margolis has failed to present any evidence to indicate that she was, in fact, paid a lower rate than people outside her protected class at those other locations apart from the bare, hearsay assertion that a Hyatt employee said they were.

*prima facie* case, to point to a person of the opposite sex performing equal work for greater pay when there is other highly probative evidence that her salary would have been higher but for her sex." *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 163 (6th Cir. 2004). Balding-Margolis, however, has presented no evidence, either direct or circumstantial, "that her salary would have been higher but for her sex." *Id*.

## D. Sexual-Harassment Claim

Balding-Margolis also appeals the district court's adverse grant of summary judgment on her hostile-work-environment claim. *See Thornton v. Fed. Express Corp*., 530 F.3d 451, 455 (6th Cir. 2008) (stating elements of the prima facie case). She has presented the following evidence to establish her prima facie case of hostile work environment based on sexual harassment: (1) Director of Security, Don Murtaugh, once invited Balding-Margolis to lie down in his room; (2) Murtaugh once told Balding-Margolis that she was attractive; (3) Murtaugh once hit Balding-Margolis on the buttocks and "untied [her] apron, which was tied in the back," Pl. Dep. at 116; (4) Schultz once commented that he had a large penis; (5) Schultz once told Balding-Margolis that he had sex with one of her customers, asked Balding-Margolis to provide a free meal to that customer, and then "put his hands . . . against the wall and dry humped it or did a pelvic thrust against it," stating "I did her, I did her," *id.* at 125; (6) Schultz had once asked a female line cook to do the "boobie dance," which involved putting the cook's "hands underneath her chest" and moving them "up and down" and shaking "her hips," *id.* at 128; (7) "Schultz repeatedly bragged to Balding-Margolis about the day that he had sexual intercourse with a fellow Hyatt server and Balding-Margolis's female co-worker at the Hyatt," Am. Compl. at 15, ¶ 58; (8) "Schultz repeatedly talked to Balding-Margolis" about a sexual relationship he had with a former co-worker, how that co-worker was pregnant, how Schultz

11

"needed to mail that pregnant woman a check so that the woman can pay for an abortion," and how he wanted Balding-Margolis to put Schultz's check in the mail.[8]  *Id.*

Upon consideration of the foregoing evidence, we believe that Balding-Margolis's allegations are sufficient to raise a question of fact as to whether she experienced a hostile work environment. *See, e.g.*, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008).  The most invasive conduct included physical touching on at least two occasions.  *See id.*; *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999) (finding that conduct including a physical invasion could "at minimum . . . raise[] a question of fact for the jury").  And Balding-Margolis alleges that Schultz "repeatedly" talked or bragged to her about his sex life and that her harassment occurred daily.[9]  *See Hawkins*, 517 F.3d at 334.

---

[8]Balding-Margolis did not mention instances (7) or (8) in her deposition, and these allegations were not considered by the district court.  They are, however, listed in her Amended Complaint, and because Balding-Margolis did not directly contradict these assertions in her deposition, we consider them for purposes of summary judgment.

[9]The district court concluded that Balding-Margolis's assertion in her affidavit that the harassment was continual, ongoing, or "daily" conflicted with Balding-Margolis's deposition testimony that she had "identified specific incidents and agreed that she had discussed everything of a sexual nature."  Dist. Ct. Order at 21.  In so concluding, the district court erred.  Balding-Margolis's precise deposition testimony in response to Hyatt's open-ended question as to whether or not she had mentioned "all the facts" relevant to her claim was that she could not think of any thing else at the moment.  Pl. Dep. at 319.  Balding-Margolis did not testify that she had mentioned every single fact she was using to support her claim.  Thus, there was no direct conflict between the deposition and the affidavit—Balding-Margolis never specifically ruled out the possibility of other instances of sexual harassment.  *See Briggs*, 463 F.3d at 513 (finding fault with the reasoning that "failure to mention . . . a material piece of evidence when asked about [a specific instance generally] was akin to admitting at the deposition that such evidence did not exist").  Furthermore, Balding-Margolis included several statements indicating that her harassment was continual and ongoing in her complaint, and she provided specific examples of that conduct.  Am. Compl. at 15 ¶ 58.  Hyatt's counsel had the benefit of the complaint at the deposition and yet failed to ask about those instances.  As Balding-Margolis points out, she "is under no obligation to volunteer information" that the questioner has not fairly sought.  Motion in Opp'n to Strike at 4-5 (Doc. 41); *see Briggs*, 463 F.3d at 513.

Despite raising a question of material fact as to whether The 1890 workplace constituted a hostile work environment, however, Balding-Margolis is unable to show that Hyatt is liable for the conduct. Hyatt is liable for Schultz's actions unless Hyatt can show by a preponderance of the evidence "that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and that Balding-Margolis "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Thornton*, 530 F.3d at 456. "Generally, an employer satisfies the first part of this two-part standard when it has promulgated and enforced a sexual harassment policy." *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). The record establishes that Hyatt had an effective sexual-harassment reporting policy. *See id.* The record further shows that Balding-Margolis's failure to take advantage of Hyatt's corrective policy was unreasonable. Although her post-deposition affidavit states that she complained to Hyatt management verbally over thirty times, Balding-Margolis's deposition testimony indicates that she never complained to anyone concerning Schultz's harassment and discriminatory conduct other than to Schultz himself. Her deposition testimony further establishes that she never complained to anyone about Murtaugh's conduct. Balding-Margolis failed to make these complaints notwithstanding that she testified that she was aware of the open-door policy, the complaint procedure, and the fact that if her immediate supervisor failed to act on her complaint she could go elsewhere. Balding-Margolis clearly took advantage of the complaint process with regard to a variety of run-of-the-mill matters, *infra* Part E, but she failed to take advantage of the policies when it mattered most. Thus, Balding-Margolis has failed to present evidence showing a genuine issue of material fact as to whether Hyatt should be held liable for Schultz's actions.

13

## E. Retaliation

Balding-Margolis next claims that the district court erred in dismissing her retaliation claims under Title VII and Ohio Revised Code § 4112.02.[10] Balding-Margolis contends that she engaged in protected activity by reporting "no less than 30 incidents of sexual harassment to Hyatt managers," by "objecting to [her manager's] daily workplace practice of referring to her age and gender" by calling her "mom," and by complaining about "her hourly wage issues related to training and tips." Appellant Br. at 31-34. Balding-Margolis has again failed to establish a prima facie case for her cause of action, as she cannot establish that she engaged in protected activity.[11] *See Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (establishing elements of prima facie case). Although Balding-Margolis contends that she made over thirty complaints, she fails to provide a citation to record evidence that supports her claim other than her affidavit, yet the pre-affidavit deposition testimony is directly to the contrary. A thorough review of the record evidence does indicate that Balding-Margolis made several complaints to Hyatt management concerning general work-related issues, including a letter to the General Manager, but there is nothing in these complaints indicating that Balding-Margolis was objecting to discriminatory conduct against her based on her membership in a protected class. It appears that Balding-Margolis was simply unhappy with the manner in which Hyatt conducted business. As a panel of this court has noted,

---

[10]"Federal law provides the applicable analysis for reviewing retaliation claims" in Ohio. *Baker v. Buschman Co.*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998) (quotation omitted).

[11]Even assuming Balding-Margolis can establish a prima facie case of retaliation, we conclude that she is unable to establish that Hyatt's reason for her termination was pretextual. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392-93 (6th Cir. 2008) (discussing ways to establish pretext). There is ample evidence in the record to show that Balding-Margolis did, indeed, misappropriate funds and violate the cash-handling procedures in a number of ways and that this was the actual and sufficient reason to explain her termination.

14

a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination.

*Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591-92 (6th Cir. 2007) (quotation omitted). Moreover, Balding-Margolis admitted in her deposition that she never spoke with Hyatt management about being subjected to sexual or age-based harassment or that she did not recall doing so. Her affidavit is insufficient to overcome the deposition testimony to the extent that she now claims that she did report harassment to Hyatt management. The district court did not err in granting summary judgment on the retaliation claims.

## F. Intentional Infliction of Emotional Distress

Balding-Margolis's claim of intentional infliction of emotional distress also fails. *See Miller v. Premier Indus. Corp.*, 737 N.E.2d 594, 603 (Ohio Ct. App. 2000) (setting forth elements). Balding-Margolis has presented no evidence that she suffered "serious" emotional distress sufficient to raise a question of material fact under Ohio law. *See Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983). Furthermore, Balding-Margolis points to no actions by Hyatt that "constitute the sort of extremely atrocious and outrageous behavior that is 'utterly intolerable in a civilized community.'" *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997)). Essentially, she argues that Hyatt's failure to act on her complaints as well as her ultimate termination constituted extreme and outrageous conduct. The record indicates, however, that Balding-Margolis did not, in fact, make the "sheer volume" of complaints that she claims, Appellant Br. at 43 n.28, and this court has

15

concluded that "'an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more.'" *Talley*, 542 F.3d at 1111 (quoting *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (applying Ohio law)).

## G. Negligent Hiring

Balding-Margolis also appeals the district court's grant of summary judgment with respect to her negligent-hiring claim. *See Peterson v. Buckeye Steel Casings*, 729 N.E.2d 813, 823 (Ohio Ct. App. 1999) (setting forth elements). Balding-Margolis contends that Hyatt knew, or should have known, about the alleged unlawful conduct of its employees, but she presents no evidence other than her post-deposition affidavit to show that she complained to Hyatt or that Hyatt should have known via other avenues. The portions of her affidavit where Balding-Margolis claims to have reported the conduct directly conflict with Balding-Margolis's deposition testimony and must be disregarded. In light of her failure to show that Hyatt knew or should have known about its managers' actions, as required by Ohio law, we conclude that Balding-Margolis cannot establish a prima facie case of negligent hiring.

## H. Public-Policy Wrongful Discharge

The Ohio Supreme Court has held "that an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a 'sufficiently clear public policy.'" *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994). In addition to identifying a clear public policy, *see id.*, to establish a prima facie case, Balding-Margolis must show that her dismissal would jeopardize that public policy. *See id.* at 57 n.8. Balding-Margolis has failed to do so. Ohio law is clear that the statutory remedies under state and federal anti-discrimination law sufficiently

16

protect an individual against unlawful discrimination and retaliation such that a public-policy tort is unavailable in such cases. *See, e.g.*, *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002). Balding-Margolis's second argument related to her public-policy tort is frivolous. Balding-Margolis alleges that Schultz questioned her about a conversation with her current attorney and that her termination was close enough in time to Schultz's inquiry to raise a question regarding the connection between the two. Balding-Margolis concedes, however, that when she spoke with her present attorney he was not her attorney; rather, he was simply a customer at the restaurant. Absent an attorney-client relationship, even if Balding-Margolis could show her termination was related to the conversation, Balding-Margolis fails invoke a public policy sufficient for wrongful discharge.

### III. CONCLUSION

After thorough consideration of each of Balding-Margolis's claims, we **AFFIRM** the district court's judgment for all of the reasons discussed above.