Filed 9/16/22  Roe v. Centinela Valley Union High etc. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| T. ROE, an Incompetent Person, etc., | B311456 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC683738) |
| v. | |
| CENTINELA VALLEY UNION HIGH SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary Y. Tanaka, Judge.  Reversed with directions.

McMurray Henriks and Yana G. Henriks for Plaintiff and Appellant.

Tyson & Mendes, Susan L. Oliver, Emily S. Berman, and Ji Eun Choi for Defendants and Respondents Centinela Valley Union High School District and Andy Mehta.

Emergent and Kenneth H. Szeto for Defendant and Respondent Juan Gutierrez.

_____

## INTRODUCTION

T. Roe, an intellectually disabled adult, by and through his guardian ad litem, Twynlette Thompson, filed this action against Juan Gutierrez, Andy Mehta, and the Centinela Valley Union High School District.  Roe alleged Mehta, who was a teacher, and Gutierrez, who was an instructional aide, sexually molested Roe in the bathroom of the high school Roe attended.

Roe appeals from the judgment entered in favor of Gutierrez, Mehta, and the School District after the trial court granted motions by each of them for summary judgment.  Roe argues the court erred in granting those motions because his deposition testimony, as well as other evidence he argues the court improperly excluded on hearsay grounds, raised triable issues of material fact regarding whether Gutierrez and Mehta sexually abused him as alleged.  We agree with Roe about his deposition testimony.  Therefore, without reaching his argument the trial court erred in excluding evidence on hearsay grounds, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Roe Files This Action*

Roe was born in January 1995.  Because of an intellectual disability, his verbal comprehension and functional communications skills are limited.  His receptive vocabulary, for

2

example, is equivalent to that of an eight-year-old child, and his expressive vocabulary equivalent to that of a seven-year-old child.

From fall 2009 through spring 2013, Roe attended Leuzinger High School, which is part of the School District. During the 2012-2013 school year, Roe was enrolled in a special education class in which Gutierrez, a School District employee, served as an instructional aide. After high school, including for the 2015-2016 school year, Roe was enrolled in an adult transition program at Leuzinger High School, and Mehta was his teacher.

In November 2017, by and through Thompson, who is his mother and guardian ad litem, Roe filed this action against Gutierrez, Mehta, and the School District. In the operative, third amended complaint, Roe asserted causes of action for (1) assault and battery, against all defendants; (2) intentional infliction of emotional distress, against all defendants; (3) negligence, against the School District; (4) negligent hiring/retention and supervision, against the School District; (5) gender violence, against Mehta and Gutierrez; and (6) dependent adult abuse, against Gutierrez.

Roe alleged that, on various occasions during the 2012-2013 school year, Gutierrez "sexually molested and abused [him] in the Leuzinger High School bathroom by physically touching [his] genitals through and under his clothing." Roe alleged that, on various occasions during the 2015-2016 school year, Mehta also sexually abused and molested him in a Leuzinger High School bathroom in the same manner. Roe alleged that the School District was vicariously liable for the sexual abuse by Gutierrez and Mehta; that it knew, or through the exercise of reasonable

3

care should have known, Gutierrez and Mehta had a propensity to sexually abuse students at Leuzinger; and that the School District failed to take reasonable steps to avoid such abuse by Gutierrez and Mehta.

B.   *Gutierrez, Mehta, and the School District File Motions for Summary Judgment*

Gutierrez, Mehta, and the School District each moved for summary judgment,[1] contending there was no triable issue of material fact regarding any of Roe's causes of action against them. Their principal argument was that Roe could not—in the words of the School District—"prove by admissible evidence that the alleged sexual misconduct by either Gutierrez or Mehta actually occurred." They submitted deposition testimony by Gutierrez and Mehta in which each stated he had never touched Roe in a sexual manner.

C.   *Roe Opposes the Motions for Summary Judgment and Presents His Evidence*

Roe opposed the motions for summary judgment, relying on the deposition testimony of several people, as well as an expert declaration and report. Roe's proffered evidence included the following:

---

[1]   Mehta and the School District styled their motions as ones seeking, in the alternative, summary adjudication. The trial court concluded, however, that "these Defendants failed to set forth the specific issues sought to be adjudicated within the notices of their motions" and that therefore the court would "treat these motions solely as motions for summary judgment." None of the parties challenges this ruling.

4

1. *The Deposition Testimony of Thompson*

Roe submitted the deposition testimony of his mother, Thompson, who stated that in August 2016 Roe told her "Mr. G and Mr. Mehta touched [his] pee pee . . . and his bootie-bootie."[2] Thompson testified Roe told her that Gutierrez touched him under his clothes and that the incident occurred in the "classroom bathroom and school bathroom." Thompson said that she did not know which man touched Roe in which bathroom or whether both men touched Roe in both bathrooms, but that Roe told her the touching occurred in both bathrooms. Roe also told her that Gutierrez touched him multiple times. When Thompson asked Roe why he had not previously told her about the touching, Roe said he was scared. Thompson reported Roe's statements to the Los Angeles County Sheriff's Department.

2. *The Deposition Testimony of Los Angeles County Sheriff's Deputy Quang Huynh*

Roe presented the deposition testimony of Los Angeles County Sheriff's Deputy Quang Huynh, who responded to the call of sexual battery generated by Thompson's report to the Sheriff's Department. Deputy Huynh testified that, on his arriving at Roe and Thompson's home, Thompson told him Roe suffered "from a mild retardation," had "a mental capacity of a seven-year-old" child, and had told her he "was touched by his school teacher in a bathroom" at Leuzinger High School. Deputy Huynh spoke with Roe, who said that "he was touched by . . . Mehta on the outer clothing of his penis area" and that "he felt scared when [Mehta] touched him." Roe, however, could not recall for the deputy when

---

[2]     Thompson explained these were Roe's terms for "his private part" and "his butt." "Mr. G" refers to Gutierrez.

5

the incident happened. Deputy Huynh testified that Roe appeared to be "mentally disabled," but that Roe "was able to communicate with [him] and pretty much told [him] what happened." It was Deputy Huynh's assessment that Roe's inability to recall when the alleged touching happened, as well as his difficulty communicating other details about the incident, was a result of his "mental condition." Deputy Huynh wrote up an incident report that included the statements to him by Thompson and Roe.

### 3. *The Deposition Testimony of Dr. Samantha Liberman and Dr. Yuri Tsutsumi*

Roe submitted the deposition testimony of two psychiatrists with whom he had therapy sessions. Dr. Samantha Liberman, who met with Roe on February 13, 2017, confirmed that her notes from that session reflected Roe "expressed that he does not want to return back to school because of 'mean teachers,'" but she did not recall whether Roe elaborated on what he meant by "mean teachers." Dr. Yuri Tsutsumi, who met with Roe on January 11, 2019, confirmed that her notes from that session reflected Roe "reported he becomes anxious at times when [he] is outside since he fears . . . encountering his teachers that abused" him, but she could not recall whether Roe "elaborated on the abuse by his teachers."

### 4. *The Deposition Testimony of Roe*

Roe presented testimony from his deposition. Although many of his substantive responses to questions by counsel for Gutierrez and counsel for the School District and Mehta were sparse, Roe did testify that Gutierrez had been "a teacher's aide"

in his class at Leuzinger High School, that in 2012 Gutierrez did something at school Roe "didn't like," that Gutierrez "touch[ed]" him, that he did not like Gutierrez because Gutierrez "was mean to [him] in the bathroom" at Leuzinger, and that Roe told his mother and grandmother about it. Similarly, Roe testified that Mehta had been his teacher, that he did not like Mehta, that Mehta was not nice to him, that Mehta did something Roe "didn't like," that Mehta "did something bad to [him] in the bathroom," that this bathroom was at Leuzinger near his classroom, and that Roe told his mother about it. Generally, whenever counsel pressed Roe for more details about what Gutierrez and Mehta did to him, Roe became nonresponsive. At one point, when counsel asked where Gutierrez had touched him, Roe called out for his mother and asked for a break. The transcript also reflects that, at several points during his deposition, Roe began to laugh for reasons that were not evident, prompting counsel to ask, multiple times, what was making him laugh. Roe never answered.

> 5. *The Declaration of Dr. Kimberley Lakes*

Finally, Roe presented the declaration and expert report of Dr. Kimberley Lakes, a licensed psychologist with specialized training in "trauma, physical, and sexual abuse" and experience evaluating more than 150 adults and children who were "sexual and/or physical abuse survivors." In addition to interviewing Thompson and reviewing other relevant evidence, including Roe's medical, therapy, and education records and his video deposition, Dr. Lakes spent more than four hours, over two days in May 2020, evaluating Roe face-to-face. During that time, Dr. Lakes and Roe were alone, while Thompson waited nearby. Dr. Lakes

also administered tests to evaluate Roe's cognitive and language abilities.

Dr. Lakes determined that Roe "is intellectually disabled and has limited verbal comprehension and functional communications skills"; that he "exhibits substantial functional impairment and limited coping skills"; that he "currently exhibits emotional symptoms, including depression, somatic, and posttraumatic stress symptoms"; that he "reports high levels of Social Stress"; and that he "demonstrates psychological naivete and below average insight into his behavior, thoughts, and emotions, which is consistent with substantial intellectual disability." Dr. Lakes also reported that Roe's "affect was at times incongruent. For example, he lowered his eyes, turned his head to the side, and laughed during the discussion of the alleged abuse." She further reported that Roe "was at times non-responsive during testing, particularly when tasks in the tests were very difficult for him or when he did not know an answer."

Dr. Lakes commented on statements Roe made to her regarding the alleged sexual abuse: "In response to the initial question (What happened?), he lowered and turned his head to the side, avoiding eye contact. He told me that he was a 'little scared' to talk about it. I encouraged him to share what he could, and he stated, they 'touched this' and indicated (pointed to) his groin area. He then laughed (seemingly nervously) and avoided eye contact (looking down and to one side). When I asked how he felt about telling me, he said 'embarrassed.' I encouraged him to talk about how he felt about what had happened, and he stated, 'I felt bad' and 'afraid.' He stated, 'I was afraid they would hurt me.' When asked to share further details, he indicated that it had happened in the bathroom. When I asked who had touched

8

his private parts, he responded 'Mr. Mehta and Mr. G.' He reported that it had happened more than one time and that other students were present, but not all the time."

She continued: "I asked [Roe] if he still thinks of this, and he said he is 'afraid a lot' that someone else will touch him. He stated that he thinks of it when he is in bed and is 'very a lot' afraid. He stated that he is afraid 'if I see somebody who is like my teacher.' . . . [H]e stated that he is upset if he has to take the bus route he took with the teachers, sees men like them, or goes to the mall they visited."

Dr. Lakes added: "[Roe's] report to me did not appear rehearsed, and his active avoidance of eye contact when disclosing is consistent with behavior individuals often exhibit when talking about abuse. . . . The level of detail provided is consistent with what would be expected for someone with his intellectual disabilities. It is not surprising that he could not recall his age or grade at the time of the abuse; he did not know his age at the time of his deposition, though he could state his date of birth, a fact that he has memorized and is able to retrieve relatively easily." And: "Given his intellectual disability, [Roe] is at high risk for abuse."

Dr. Lakes concluded Roe "is exhibiting clinically significant emotional symptoms consistent with those often expressed by individuals who have experienced sexual abuse." These included exhibiting "a fear of men," telling Dr. Lakes "he did not like men like his teachers," exhibiting "anxiety regarding separation from his mother,"[3] and "a number of other posttraumatic and

---

[3]     Dr. Lakes explained "children and adolescents who have disclosed abuse often become more anxious after the disclosure

depressive symptoms." Dr. Lakes further concluded that, "because of [Roe's] fear of men, his inability to answer questions at his deposition, especially questions related to his sexual abuse, may at least in part be due to the attorneys being male. In addition, . . . individuals with his level of intellectual and communicative impairment are able to disclose more about their experiences when questioned using a supportive, structured approach." Dr. Lakes diagnosed Roe with "(1) Intellectual Disability, Moderate, (2) Posttraumatic Stress Disorder, and (3) Major Depressive Disorder, Moderate."

D. *The Trial Court Sustains Objections to Roe's Evidence and Grants the Motions for Summary Judgment*

In ruling on the motions for summary judgment, the trial court sustained 134 written objections by the defendants to the evidence Roe submitted. These included hearsay objections to, effectively, all statements about what Roe told the deponent or declarant about what Gutierrez and Mehta did to him. The court also sustained objections to other statements by Dr. Lakes, including her statements that Roe feared being touched again and seeing men who might remind him of his teachers; that, given his impairments, it was not surprising Roe had difficulty communicating details about the alleged abuse; that, despite his impairments, Roe was capable of "accurately disclosing abuse"; that, given Roe's "fear of men," his inability to answer questions at his deposition may have been partly due to the fact the questioning attorneys were male; that individuals with Roe's impairments "are able to disclose more about their experiences

---

because they fear they [may] get in trouble for telling on the abuser."

10

when questioned using a supportive, structured approach"; and that, given his disability, Roe "is at a high risk for abuse." The defendants did not object to Dr. Lakes's statements that Roe exhibited symptoms consistent with someone who had experienced sexual abuse.

The trial court granted Gutierrez's motion for summary judgment. Observing that the "factual predicate" for all Roe's causes of action against Gutierrez was Roe's allegation "he was sexually abused by Gutierrez," the court ruled Roe "submitted no competent admissible evidence to show that he was abused by Gutierrez." The court stated: "Instead, the facts gleaned from Plaintiff's deposition show that he did not speak to Gutierrez and does not remember Gutierrez. . . . Plaintiff was unresponsive as to whether or not Gutierrez touched him, or whether they had been in a bathroom together, as alleged . . . . Plaintiff does seem to indicate that Gutierrez was 'mean to him' in some manner but is unresponsive with any other details that could document some type of sexual abuse."

The trial court also stated: "Plaintiff also attempts to rely on inadmissible hearsay evidence from his mother as well as various health care providers, including Dr. Yuri Tsutsumi and Dr. Samantha Liberman, and law enforcement personnel regarding alleged statements made by Plaintiff to them allegedly outlining sexual abuse. However, such statements are hearsay, offered for the truth of the matters asserted, to which no hearsay exception exists." The court stated Roe had provided no authority establishing an "exception to the hearsay rule" based on "the party's disability."

For the same reasons, the trial court granted Mehta's motion for summary judgment, ruling Roe submitted "no

competent admissible evidence to demonstrate that Mehta engaged in sexual assault against [him]." The court stated: "Plaintiff testified that he did not like Mehta and that he was mean to Plaintiff, but he was nonresponsive when asked why he did not like Mehta and why Mehta was mean. . . . Plaintiff stated that Mehta did something to him in the bathroom but could not clarify other than it was 'something bad.' . . . Again, all evidence provided by Plaintiff to support these claims consist of hearsay comments as noted above in the analysis to Gutierrez's motion."

The trial court also granted the School District's motion for summary judgment. Regarding the causes of action for assault and battery and for intentional infliction of emotional distress, which the court observed "are premised upon vicarious liability based on the conduct of Gutierrez and Mehta," the court ruled there was no triable issue of material fact for the reasons outlined in its rulings on the motions by Gutierrez and Mehta: "Plaintiff has no competent first-hand evidence to demonstrate that the individual Defendants engaged in inappropriate sexual conduct."

The trial court ruled the School District was also entitled to judgment as a matter of law on Roe's first two causes of action for the additional reason that, as the court explained, "generally, sexual misconduct is outside of the course and scope of employment." Quoting *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, at page 1110, the court acknowledged that, as "'an alternate theory to respondeat superior, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort. [Citations.] The failure to discharge an employee who has committed misconduct may be evidence of

12

ratification. [Citations.] The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery.'" The court concluded there was no evidence the School District "ratified the alleged conduct of the individual Defendants."

The trial court also ruled the School District was entitled to judgment as a matter of law on the causes of action for negligence and for negligent hiring and supervision. The court ruled that, "without any admissible evidence of the underlying offensive conduct, these causes of action must also fail as the essential element of causation of damages cannot be established."

Roe filed a motion for new trial, which the trial court denied. Roe timely appealed.[4]

---

[4] The trial court granted the motions for summary judgment on January 11, 2021 and entered judgment in favor of Gutierrez on January 20, 2021 and in favor of the School District and Mehta on February 3, 2021. The court denied Roe's motion for a new trial on March 22, 2021. Roe's notice of appeal states he is appealing from the orders granting the motions for summary judgment and the order denying the motion for a new trial. None of those orders is appealable. (See *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 663 [order denying a motion for a new trial is not appealable]; *Dang v. Maruichi American Corp.* (2016) 3 Cal.App.5th 604, 608, fn. 1 [order granting a motion for summary judgment is not appealable].) But because the court entered judgments in favor of the three defendants after the orders granting the motions for summary judgment, we construe the notice of appeal as an appeal from the judgments. (See *North American Title Company, Inc. v. Gugasyan* (2021) 73 Cal.App.5th 380, 388, fn. 4; *Archer v. Coinbase, Inc.* (2020) 53 Cal.App.5th 266, 271, fn. 2; *Mukthar v. Latin American Security Service*

# DISCUSSION

Roe argues the trial court erred in granting the motions for summary judgment by Gutierrez, Mehta, and the School District because his evidence raised triable issues of material fact regarding whether Gutierrez and Mehta sexually abused him as alleged. First, Roe cites statements by Thompson and others describing what Roe told them Gutierrez and Mehta did to him, which Roe argues the trial court erroneously excluded as hearsay. As part of this argument, Roe urges us to recognize a new hearsay exception "for developmentally disabled victims of abuse." Second, Roe cites his deposition testimony, from which, he argues, the court failed "to draw reasonable inferences . . . in the light most favorable to" him. Because we agree Roe's testimony, together with other admissible evidence, raised triable issues of material fact precluding summary judgment in favor of Gutierrez, Mehta, and the School District, we do not reach Roe's argument the trial court erred in excluding other evidence, nor do we create a new hearsay exception.

## A.  *Applicable Law and Standard of Review*

A court may grant a motion for summary judgment "'only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."' [Citation.] 'A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action.'" (*Doe v.*

---

(2006) 139 Cal.App.4th 284, 288; *Taylor v. Trimble* (2017) 13 Cal.App.5th 934, 939.)

*Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668 (*Doe*); see Code Civ. Proc., § 437c, subd. (c).)

On a cause of action for which the plaintiff has the burden of proof at trial, "the defendant 'must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence necessary to establish at least one element of the cause of action. [Citation.] Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ."' [Citations.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Doe*, *supra*, 70 Cal.App.5th at pp. 668-669; see Code Civ. Proc., § 437c, subd. (p)(2).)

"'We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.'" (*Doe*, *supra*, 70 Cal.App.5th at p. 669.) "We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; accord, *Doe*, at p. 669; see *Kaney v. Custance* (2022) 74 Cal.App.5th 201, 213 ["'we must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment'"].)

15

B.      *The Trial Court Erred in Granting Gutierrez's Motion for Summary Judgment*

1.      *Gutierrez Was Not Entitled to Judgment as a Matter of Law on Roe's Cause(s) of Action for Assault and Battery*

Roe's first cause of action against Gutierrez was really two: assault and battery. "The essential elements of a cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed [he or she] was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." (*So v. Shin* (2013) 212 Cal.App.4th 652, 668-669.)

"The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." (*So v. Shin, supra,* 212 Cal.App.4th at p. 669.) By definition, one cannot commit a battery without also committing an assault, "which is nothing more than an attempted battery." (*People v. Fuller* (1975) 53 Cal.App.3d 417, 421; see *People v. Chance* (2008) 44 Cal.4th 1164, 1170 [""'An assault is an incipient or inchoate battery; a battery is a consummated assault.'""]; *People v. Cook* (2017) 8 Cal.App.5th 309, 313 [same]; 5 Witkin, Summary of Cal.

Law (11th ed. 2022) Torts, § 452 ["In tort actions for assault and battery, the courts usually assume that these Penal Code definitions [of 'assault' and 'battery'] and related criminal cases are applicable."].)

Roe's deposition testimony raised triable issues of material fact on his cause of action for battery and, thus, also on his cause of action for assault. Contrary to the trial court's statement Roe did not remember Gutierrez, Roe testified that Gutierrez was a teacher's aide in one of his classes at Leuzinger High School and that in 2012 Gutierrez did something to him Roe did not like. The court also incorrectly suggested Roe provided no response to questions about whether Gutierrez touched him or was ever in the bathroom with him. In fact, Roe's testimony—liberally, but reasonably, construed—was that Gutierrez "touch[ed]" him in the bathroom in a way Roe did not consent to, considered "mean," and found upsetting enough that he reported it to his mother and grandmother. Moreover, considering Roe's allegations, a trier of fact could reasonably interpret the word "touch" to mean touching in a manner and in a place that evidenced a sexual purpose.[5] (See *Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1027 ["testimony must be read in context"]; *Silva v. Superior Court* (1981) 119 Cal.App.3d 301, 306 [court should interpret a declarant's statement in the context of the allegations to which it pertained].) Being "touched for a sexual purpose without consenting" is a battery. (*People v. Robinson* (2016) 63 Cal.4th

---

[5] As stated, Roe alleged both Gutierrez and Mehta sexually molested and abused him in the school bathroom by physically touching his genitals through and under his clothing. At Roe's deposition, counsel for the School District asked Roe: "Did Mr. G ever touch you?" Roe answered: "Yeah."

200, 204; see Civ. Code, § 1708.5 [sexual battery includes acting "with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results"]; Pen. Code, § 243.4, subd. (e)(1) [sexual battery is touching "against the will of the person touched . . . for the specific purpose of sexual arousal, sexual gratification, or sexual abuse"]; *People v. Andrews* (2015) 234 Cal.App.4th 590, 602 [a "defendant . . . commits a sexual battery if he engages in an intimate non-consensual touching"].) Dr. Lakes's opinion that Roe's emotional symptoms were consistent with those exhibited by people who have experienced sexual abuse, an opinion none of the defendants objected to or disputed, supported Roe's testimony on this point.

Gutierrez argues "nothing in [Roe's] deposition testimony evidences the element of intentional conduct common to each claim" of assault and battery. But intent—including the specific intent required to prove sexual battery—"may be proved from inferences drawn from the facts and circumstances surrounding the offense." (*M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607, 622; see *ibid.* [""Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.""].) The actor's purpose may also "be inferred from the act itself." (*Ibid.*)

Here, as discussed, a trier of fact could reasonably interpret Roe's testimony that Gutierrez touched him to mean Gutierrez touched Roe in such a way that Gutierrez's sexual purpose was evident from the act itself. In addition, Roe testified Gutierrez committed the offensive touching in the bathroom—a relatively secluded, private place. A trier of fact could reasonably infer

18

Gutierrez chose that location because he intended to touch Roe for the evident purpose of sexual arousal, gratification, or abuse and did not want to be seen. This evidence was sufficient to create a triable issue of material fact on the element of intent. (See Pen. Code, § 243.4, subd. (e)(1); *People v. King* (2010) 183 Cal.App.4th 1281, 1319 [sexual battery requires "specific intent to cause sexual arousal, gratification or abuse"].)

2. *Gutierrez Was Not Entitled to Judgment as a Matter of Law on Roe's Cause of Action for Intentional Infliction of Emotional Distress*

""""The elements of the tort of intentional infliction of emotional distress are: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . ." Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.""" (*Colonial Van & Storage, Inc. v. Superior Court* (2022) 76 Cal.App.5th 487, 506.)

Roe's testimony raised triable issues of material fact on this cause of action as well. As discussed, Roe's testimony supported a reasonable inference Gutierrez touched him in the bathroom, without Roe's consent, for a sexual purpose. This testimony is sufficient to support a finding that Gutierrez's conduct was extreme and outrageous. (See *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295 ["a claim of sexual harassment

19

may establish the outrageous conduct element for an intentional infliction of emotional distress claim"]; *In re Shannon T.* (2006) 144 Cal.App.4th 618, 623 ["in a civilized society, mature people ordinarily do not touch the intimate parts of other people without consent"].)  And Dr. Lakes's assessment of Roe's mental health supported a reasonable inference Roe suffered extreme emotional distress, "including depression, somatic, and posttraumatic stress symptoms," as a result of that sexual abuse.  (See *Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 216 [evidence of severe emotional distress includes depression].)

3.  *Gutierrez Was Not Entitled to Judgment as a Matter of Law on Roe's Cause of Action for Gender Violence*

Roe's deposition testimony also raised triable issues of material fact on his cause of action against Gutierrez for gender violence.  "Civil Code section 52.4 authorizes an award of civil damages to any person subjected to gender violence." (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1517, fn. 6.)  The statute defines "gender violence" to include a "physical intrusion or physical invasion of a sexual nature under coercive conditions . . . ."  (Civ. Code, § 52.4, subd. (c)(2).)  The parties do not suggest any term in this definition is ambiguous or has anything other than its plain, commonsense meaning.  (See *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630 ["we begin with the plain, commonsense meaning of the language used by the Legislature," and if "the language is unambiguous, the plain meaning controls"]; cf. *County Inmate Telephone Service Cases* (2020) 48 Cal.App.5th 354, 371-372 [rejecting "a dictionary definition" of

the term "coercion" in the Tom Bane Civil Rights Act (Civ. Code, § 52.1) because the Legislature intended the statute to address only "egregious interference with constitutional rights"]; *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 395 [same].)

Touching for a sexual purpose is a physical intrusion or invasion of a sexual nature. (See *Balding-Margolis v. Cleveland Arcade* (6th Cir. 2009) 352 Fed.Appx. 35, 43 [describing "physical touching" as "invasive conduct"].) And the plain meaning of "coercive conditions" includes those involving use of force, threat, or some form of pressure. (See, e.g., *Regents of University of California v. Superior Court* (2008) 165 Cal.App.4th 672, 679 ["[d]ictionaries define 'coerce' broadly as '[t]o force to act or think in a given manner; to compel by pressure or threat'"]; *Thomas v. Harrington* (1st Cir. 2018) 909 F.3d 483, 492 ["'coercion' means 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done'"]; *United States v. Herrera* (5th Cir. 2011) 647 F.3d 172, 178-179 ["numerous state statutes define 'coerce' or a variation of the term to include both physical force and threats"]; *Walker v. City of Lakewood* (9th Cir. 2001) 272 F.3d 1114, 1129 ["To 'coerce' is 'to compel to an act or choice by force, threat, or other pressure.'"].) From Roe's testimony that Gutierrez's touching was "mean" and (by reasonable implication) nonconsensual and that it occurred in the enclosed, secluded space of a school bathroom, a trier of fact could reasonably infer Gutierrez accomplished it by use of force, threat, or pressure. (See *In re T.F.* (2017) 16 Cal.App.5th 202, 220 ["'[A] school is where compliance with adult authority is required and where such compliance is compelled almost exclusively by the force of

21

authority.  Like it or not, that is the definition of coercion.'"]; *Doe v. Starbucks, Inc.* (C.D. Cal., Dec. 18, 2009, No. SACV 08-0582) 2009 WL 5183773 at p. 17 [triable issue of fact regarding whether a supervisor coerced the plaintiff into committing sexual acts precluded summary judgment]; Goldscheid, et al., *State Civil Rights Remedies for Gender Violence: A Tool for Accountability* (2018) 87 U. Cin. L.Rev. 171, 180 ["courts have upheld claims based on allegations of physical invasions of a sexual nature that occurred under coercive conditions, regardless of a particular showing of gender animus"].)

### 4. *Gutierrez Was Not Entitled to Judgment as a Matter of Law on Roe's Cause of Action for Dependent Adult Abuse*

Finally, Roe asserted a cause of action against Gutierrez for dependent adult abuse under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.). (See *Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858.)  The Act renders a defendant liable for "[a]buse of an elder or a dependent adult," which includes "[p]hysical abuse . . . with resulting physical harm or pain or mental suffering."  (Welf. & Inst. Code, § 15610.07; see *Stewart v. Superior Court* (2017) 16 Cal.App.5th 87, 102.)  "Physical abuse" includes various forms of assault and battery, including sexual battery as defined in Penal Code section 243.4.  (Welf. & Inst. Code, § 15610.63, subd. (e)(1); see *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 88 [physical abuse under Welfare and Institutions Code section 15610.63 includes assault and battery].) A "dependent adult" under the Act is a person "between the ages of 18 and 64 years who resides in this state and who has physical

or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities . . . ." (Welf. & Inst. Code, § 15610.23, subd. (a); see *Levin v. Winston-Levin* (2019) 39 Cal.App.5th 1025, 1037, fn. 4.)

As he did in the trial court, Gutierrez contends on appeal he is entitled to judgment as a matter of law on this cause of action because there was no admissible evidence he sexually abused Roe. As discussed, however, Roe's deposition testimony raised a triable issue of material fact regarding whether Gutierrez committed sexual battery against him, as that offense is defined in Penal Code section 243.4. The trial court erred in ruling otherwise.

C. *The Trial Court Erred in Granting Mehta's Motion for Summary Judgment*

With the exception of the cause of action against Gutierrez for dependent adult abuse, Roe asserted the same causes of action against Mehta that he asserted against Gutierrez: assault and battery, intentional infliction of emotional distress, and gender violence. The analysis of those causes of action as asserted against Mehta tracks the analysis of those asserted against Gutierrez. In fact, Roe's testimony concerning Mehta was substantially the same as that concerning Gutierrez: Without Roe's consent Mehta "did something bad" to him in the school bathroom, which upset Roe enough that he reported it to his mother. Construed liberally and in the light most favorable to Roe—and in particular taking into account that Roe's ability to express himself is that of a seven-year-old child—a reasonable

23

interpretation of his testimony is that Mehta sexually abused him in the school bathroom as alleged.

From that testimony, together with Dr. Lakes's opinion that Roe's emotional symptoms were consistent with someone who had been sexually abused, a trier of fact could reasonably find Mehta committed sexual battery against Roe, within the meaning of Penal Code section 243.4, subdivision (e)(1). Roe therefore raised triable issues of material fact on his cause(s) of action for assault and battery. For the reasons stated in the analysis of the causes of action against Gutierrez for intentional infliction of emotional distress and gender violence, Roe raised triable issues of material fact on those causes of action against Mehta as well. Mehta therefore was not entitled to judgment as a matter of law on any of Roe's causes of action, and the trial court erred in granting his motion for summary judgment.

D.    *The Trial Court Erred in Granting the School District's Motion for Summary Judgment*

Against the School District, Roe asserted causes of action for assault and battery, intentional infliction of emotional distress, negligence, and negligent "hiring/retention and supervision." The trial court ruled the School District was entitled to judgment as a matter of law on these causes of action because there was no admissible evidence "of the underlying offensive conduct" by Gutierrez or Mehta. That ruling was error: As discussed, Roe raised triable issues of material fact regarding whether Gutierrez and Mehta sexually abused him as alleged.

The trial court, however, ruled the School District was entitled to judgment as a matter of law on the causes of action for assault and battery and for intentional infliction of emotional

24

distress for an additional reason—namely, neither the law nor the evidence supported finding the School District vicariously liable for sexual misconduct by Gutierrez or Mehta. Roe has not challenged that ruling. Therefore, he has failed to demonstrate the court erred in ruling the School District was entitled to judgment as a matter of law on his causes of action for assault and battery and for intentional infliction of emotional distress. But because he has shown the School District was not entitled to judgment as a matter of law on his remaining causes of action, Roe has demonstrated the trial court erred in granting summary judgment in favor of the School District.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its orders granting the motions for summary judgment by Gutierrez, Mehta, and the School District and to enter new orders denying those motions.  Roe is to recover his costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


WISE, J.*

---

\*    Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.